Sterling *v.* Jaudon.

STERLING & BUNTING *vs.* JAUDON *et al.*

The mere fact that a check, paid out by a member of a firm, is in the name of the firm, is not sufficient notice to the parties receiving it that it is partnership property; nor enough to put them on inquiry before crediting the amount to the private account of the partner of whom they receive it. •

The plaintiffs employed the defendants, who were brokers, to sell gold for them to the amount of $30,000. They had not the gold to deliver, but it was intended to sell it short, in expectation of a fall. The defendants made the sale, and notified the plaintiffs. A deposit was made with them, in the check of the plaintiffs' firm, for $15,700, which the plaintiffs alleged was to be placed to their credit. Subsequently, the defendants gave notice to the plaintiffs that they would require some money the next day; and $4000 was paid them. The defendants afterwards gave notice that unless they had a further margin, they should close out the gold in an hour. They then bought the gold for the plaintiffs, at a large loss. The plaintiffs denied their right to do so, and repudiated the transaction, and brought an action to recover back the moneys deposited.

*Held* that the defendants were not bound to continue liable for the plaintiffs' contracts for an indefinite period. That if the margin was deficient they might have closed the transaction without notice, by purchasing the gold on the plaintiffs' account; but if they were unwilling to continue liable even with the margin, they could give notice to that effect, and then,

if after a reasonable notice, the plaintiffs did not comply, they could act in
the same way.

In such a transaction, no notice is necessary of the time and place at which
the brokers will make the purchase. That rule only applies to a pledge of
stocks or other securities for the payment of a debt.

THE plaintiffs made a contract with the defendants to sell
gold for them to the amount of $30,000. They had not
the gold to deliver; but it was intended to sell it short, in ex-
pectation of a fall. The defendants made the sale; and noti-
fied the plaintiffs. A deposit was made with them, in the
check of the firm, for $15,700, which the plaintiffs allege was
to be placed to the plaintiffs' credit. About the 1st of Novem-
ber the defendants gave notice to the plaintiffs that they
would require some money the next day, and a check for
$4000 was paid them. The defendants afterwards gave no-
tice that unless they had a further margin, they should close
out the gold in an hour. They afterwards bought the gold
for the plaintiffs at a large loss. The plaintiffs denied their
right to do so, repudiated the transaction on their part, and
brought this action to recover back the moneys deposited by
them with the defendants.

The orders for the plaintiffs were given by Erasmus Ster-
ling. He also had transactions of a similar character with
the defendants on his own account. The plaintiffs proved
by Erasmus Sterling that the money deposited with the de-
fendants in their checks was to be placed to the account of
the firm, and none to the individual account of Erasmus
Sterling, while the defendants testified that they were directed
by him to apply the proceeds of the check to both accounts.
This question was submitted to the jury. There was some
evidence as to a custom among brokers, which was submitted
to the jury. The plaintiffs claimed such custom to be illegal,
and asked to have the jury so instructed, which was refused.
The court also charged the jury, that they were to decide
whether Sterling gave directions at the time of delivering
the check of $15,700 to divide it to both accounts, and if so

that they were authorized to do so. To this the plaintiffs excepted. There were some requests to charge, which the court refused, and to which there were exceptions.

The jury found for the defendants. A motion for a new trial was denied, and judgment was entered for the defendants. The plaintiffs appealed from the order and the judgment.

*S. P. Nash,* for the plaintiffs.

*Stanley, Langdell & Brown,* for the defendants.

*By the Court,* INGRAHAM, J. The first point made by the plaintiffs is as to the right of the defendants to appropriate the money of the firm to the private account of Erasmus Sterling. It is very clear they would have no such authority without instructions so to do. Whether or not they had such orders at the time the money was paid to them was to be decided by the jury on contradictory testimony. They found for the defendants, and such finding necessarily involves a finding that they had such instructions from Sterling when the money was paid. The question then is whether the judge erred in charging the jury "if Sterling directed the firm check to be applied in whole or in part to his private account, the defendants could so apply it." It must be remembered that all the transactions were made by E. Sterling, who had previously settled up accounts of the firm. No notice was given in any way that these funds were the property of the firm, and the only fact on which the plaintiffs can rely is, that the check, being in the name of the firm, was sufficient notice to the defendants that it was partnership property, and was enough to put them on inquiry before giving credit to E. Sterling on account of it. This is not the case of paying an old debt with partnership funds, but it is an incurring of liability on the strength of the payment. It was used to increase the margin of E. Sterling on

his private transaction, without which the defendants would not have incurred the additional risk of holding themselves liable to furnish the gold for Sterling on his contract, when the price was rising.

I do not think the mere fact that the check was the check of the firm was sufficient notice. All the cases which hold the delivery of partnership property to a third person for the private account of one of the partners, to be invalid, base that rule upon the fact of knowledge on the part of the party receiving it. The mere fact of the check being that of the firm is not such notice. If it be so, then in all cases where a man pays the check of a third party, the person receiving it would be compelled first to inquire as to the *bona fides* of the check and the right of the party to use it. Such a rule would not answer in a commercial community. The presumption may just as well be indulged that the firm held money belonging to the individual partner, as that he was guilty of a fraud upon his copartners. Some other proof was necessary to establish notice.

The plaintiffs contend that the notice requiring a further margin or that the defendants would close the gold for their account at the market price on that afternoon, was insufficient. The defendants were not bound to continue liable for the plaintiffs' contracts for an indefinite period. If the margin was deficient, they might have closed the transaction without notice by purchasing the gold on the plaintiffs' account. If they were unwilling to continue liable even with the margin, they could give notice to that effect, and then if, after a reasonable notice, the plaintiffs did not comply, they could act in the same way.

In such a transaction as this, no notice is necessary of the time and place at which they will make the purchase. That only applies to the pledge of stocks or other securities for the payment of a debt. The defendants were bound to make the purchase at the market price, and in purchasing they assumed the responsibility to the plaintiffs to do so. We

have so held lately in a case decided in the general term. Some evidence was given as to a custom among brokers entitling them to close out an account of their customer with a reasonable notice. There was some contradiction among the parties on this point. The evidence was received without objection, and the judge left it to the jury as evidence in the case. The plaintiffs' counsel requested the judge to instruct the jury to disregard it as an illegal custom, which he refused to do. There was no error in this refusal. Whether the custom was proven or not was immaterial. It was nothing more than the legal right of the defendants without a custom, and the attempt to sustain that right by proof of custom was unnecessary. Whether made out or not, it would not have altered the legal liabilities of the parties.

Judgment should be affirmed.

[NEW YORK GENERAL TERM, April 1, 1867. *Leonard, Ingraham* and *J. C. Smith,* Justices.]