## ENT *v.* EVANS, LIPPINCOTT & CUNNINGHAM.

In an action for damages for selling without authority mess pork held under the following contract, viz:

"CINCINNATI, *November* 26, 1869.
"We have this day sold Blackburn Holmes 300 barrels of mess pork (our brand) at $31.50 per barrel, to be delivered at his option, he paying interest at the rate of ten per cent. per annum. Commmission on sale, two and one-half. Storage, six cents per barrel per month. Margin of five dollars per barrel, to be paid us December 20, 1869. Charges to commence from date.
[Signed,]     "EVANS, LIPPINCOTT & CUNNINGHAM."

Defendants aver, as a fourth defense, "that they sold said merchandise to the best advantage, and that they had the right under their contract with said Holmes, by virtue of the custom of the pork trade in Cincinnati, which custom was well known to the said Holmes at the date of said transaction, to sell said merchandise for want of margin thereon, irrespective of the orders of said Holmes, the margin having been exhausted at and before said sale, and said Holmes having been notified to renew said margin, and having failed to do so for a reasonable time."

*Held,* that this contract contains no provision for a renewal of the margin, and that a sale made after a demand of a renewal of the margin without notice to the plaintiff of the time and place of sale, was not authorized by the contract, and that a custom of the pork trade in Cincinnati authorizing a sale under such circumstances, without such notice, would be unreasonable and in violation of law.

Whether such a sale could have been justified under such a custom, if the contract had contained a provision for the renewal of the margin, *quære?*

*Stallo & Kittredge,* for plaintiff.

*Matthews, Ramsey & Matthews,* for defendants.

*C. B Matthews* urged the following points on behalf of the defendants :

1. That the pork was in the hands of these defendants as vendors having a lien upon it for the unpaid purchase money and charges.

2. That the defendants had the legal right to sell said pork upon the default of Holmes.

(*a.*) The vendor of personal property, where no credit is given, has a lien for the price upon the goods so long as they remain in the vendor's hands. 1 Parsons on Con. 526 ; 3 Ib. 256 ; Benjamin on Sales, 596.

(*b.*) The vendor's lien is not destroyed by an agreement by him to store the goods. 3 Parsons, 258.

(*c.*) If the vendee refuse to comply with conditions precedent to delivery, the seller may resell them and hold the buyer responsible for any deficit in price. 1 Parsons, 534 ; Smith's Manual of Com. Law, 180 ; Chitty Pl. 813, and notes ; *Ashbrook* v. *Hite*, 9 Ohio St. 357 ; 5 Johns. 395 ; 2 Kent's Com. 504 ; 15 Wend. 493 ; 1 Sandf. 297 ; 1 E. D. Smith, 590 ; 30 N. Y. 549 ; 49 Barb. 606 ; 34 Ib. 301 ; 29 Ib. 315.

3. The influence of custom upon a written contract. Chitty on Contracts, 88, note A and cases cited ; 2 Parsons, 638, *et seq.*, and 546 ; 9 Pick. 197 ; 4 Met. 464 ; 11 Ib. 186 ; 9 Ib. 354 ; 16 N. Y. 392 ; 1 Smith's L. Cases, 577, and notes ; 5 Ohio, 309 ; 16 Ib. 513 ; Leake on Contracts, 112 ; 6 N. Y. 64 ; 1 Sup. Court Reporter, 94 ; 6 Hurl. & N. 617 ; 2 Disney, 482.

Taft, J.   This suit was brought to recover damages from the defendants, for selling a quantity of mess pork at private sale without orders and without notice of the time and place of sale to the plaintiff, who was the owner. The contract upon which the liability arose was written in the following words, viz :

" Cincinnati, *Nov.* 26, 1869.

" We have this day sold Blackburn Holmes 300 barrels of mess pork (our brand) at $31.50 per barrel, to be deliv-

ered at his option, he paying interest at rate of ten per cent. per annum; commission on sale, two and one-half; storage, six cents per barrel per month; margin of five dollars per barrel, to be paid us December 20, 1869. Charges to commence from date.

    [Signed,]    "EVANS, LIPPINCOTT & CUNNINGHAM."

The pork, falling in the market rapidly, was sold in February, 1870, at considerable loss. Afterward, the market recovered, and hence this suit for damages under the contract.

The answer states several distinct defenses. The fourth is as follows:

"That the defendants sold the said merchandise to the best advantage to which it could be sold at the dates of sales, and that they had the right, under their contract with said Holmes, by virtue of the custom of the pork trade in Cincinnati, which custom was well known to said Holmes at the date of said transaction, to sell said merchandise for want of margin thereon, irrespective of the orders of said Holmes, the margin having been exhausted at and before said sale, and said Holmes having been notified to renew said margin, and having failed to do so for a reasonable time."

The language of this defense implies that the margin of five dollars per barrel had been put up and exhausted, and that the defendants sold the pork for want of an additional deposit as margin; while the contract seems to contemplate only a "margin" of five dollars per barrel, to be paid defendants December 20, 1869.

The case would stand differently if it had been averred that the original five dollars per barrel had not been advanced December 20, 1869, according to the contract. But it is averred that the usage of the pork trade of Cincinnati authorized the defendants to sell in default by plaintiffs to receive margin, when exhausted, without notice to the plaint-

iff of the time and place of sale. The plaintiff claims that such a usage would be in violation of law and invalid.

The contract makes no express provision for a sale without authority from the plaintiff, or without notice to the plaintiff; and no such authority can be inferred, unless it can be done, as is now attempted, by showing a custom of trade in Cincinnati. Many contracts are interpreted by the customs of the place where they are made. But there are some things which can not be incorporated in a written contract by custom merely. A custom must be reasonable. It is not always clear what will be regarded as a reasonable custom by the courts. But there have been recent adjudications limiting the operation of custom in explaining or modifying written contracts of this sort.

A mere pledgee of personal property, held to secure a debt, can not sell it on default in payment, without giving notice of time and place of sale. This principle is well established by judicial decisions. The question is, whether the relation of these parties is that of pledgor and pledgee merely.

The most recent, as well as the most important case we have found on this point, is that of *Markham* v. *Jaudon,* 41 N. Y. 235. That case related to the purchase of railroad stock by the plaintiff, who had paid a margin of ten per cent. upon the amount, and agreed to "keep it good," to the brokers who were to advance the ninety per cent. and carry the stock for the plaintiff. The stock fell, and the margin was exhausted. The brokers notified the plaintiff, and requested him to make good his margin, which he failed to do; and hid himself to avoid service of notice of the time and place of sale. The sale was made without such notice, at a loss of $5,000. Soon after, the stocks rose in the market to the former price, and a suit was brought against the brokers. It was held by a majority of the court that the plaintiff was a pledgor, and the defendants were pledgees; that the stock was the property of the plaintiff pledged to the defendant as security for the repayment of

their advances, and that a sale by them, except upon judicial proceedings, or after a demand of repayment of the advances and commissions, and a reasonable personal notice to him of their intention to make such sale in case of default in payment, specifying the *time and place* of sale, was a wrongful *conversion* by them of the property of the plaintiff.

It was also held, that *evidence of a usage* that stock so held might be sold without notice to the broker whenever, by the fall of the stock in the market, the "margin" was exhausted, was inadmissible, such usage being in direct variance with the settled rule of law applicable to the case.

This was a case of great importance in its bearing upon the enormous transactions in the New York stock market. In that case, as in this, there was no express authority given in the contract that the defendants might sell without notice, if the margin was not kept good. In this respect both these cases differ from the case of *Patterson* v. *Keys*, decided by this court, 1 Superior Court Reporter, 94. In the last-mentioned case, there was express power given to sell, if the margin was not kept good. In that case, this court held, in Special and General Term, that the broker might sell when it was necessary to protect himself, after notifying the owner of the property to advance the margin.

In the case of *Markham* v. *Jaudon*, there was an express stipulation on the part of the pledgor, to "keep the margin good," which is wanting in the contract we are considering.

The defendants aver a notice to the plaintiff to *renew* said margin, and that by the custom of the pork trade in Cincinnati they were authorized to sell under such circumstances, without the consent of the plaintiff, and without notice of time and place of sale.

Prior to the decision of the case of *Markham* v. *Jaudon*, as reported in 41 N. Y. 235, the question involved in that case had been decided the other way in two recent cases, in the Supreme Court of New York, viz: in *Sterling* v. *Jaudon*, 48 Barb. 459, Ingraham giving the opinion, and holding,

that " in such a transaction no notice was necessary of the time and place " of sale; and in *Hanks* v. *Drake*, 49 Barb. 186, in which it was held, " that, under such an agreement, the notice which the law requires in the case of the sale of *pledged stock*, as security for the payment of a sum of money advanced thereon, is not required in such a case."

It is also to be mentioned, that in *Markham* v. *Jaudon*, 41 N. Y. 235, there were two strong dissenting opinions which sustained the position taken by the Supreme Court, holding that the agreement of defendants to hold or carry the stock was dependent on the plaintiff furnishing them with the means to do so, and that when the plaintiff failed in that respect the obligation to hold the stock ceased, and the right to sell was complete—in short, that the relation of the parties is wholly by force of a mutual and dependent contract.

They further held, that if the construction of the contract was doubtful, the evidence of the usage in regard to such contracts, prevailing in Wall street, was competent to show the true interpretation of the contract as understood by both parties.

The weight of authority, at present, would seem to be in favor of the conclusion announced by the majority of the court. But the facts, as stated in this fourth defense, do not require us to pass upon that precise question, as here is no express provision that the margin of five dollars shall be kept good or renewed; and the custom in the present case would have to supply not only the want of an express authority to sell without notice of time and place of sale, but also the want of a promise to *renew* the margin.

This, we think, is going too far. Without committing ourselves, therefore, to the doctrine of the majority of the court in *Markham* v. *Jaudon*, we sustain the demurrer to this fourth defense, as not stating facts sufficient to bar the action.