ROCHESTER AND CHARLOTTE TURNPIKE ROAD COMPANY, Respondent, v. ROBERT S. PAVIOUR, Appellant.

PAYMENT OF INDIVIDUAL DEBT WITH CORPORATE CHECKS BY OFFICER OF CORPORATION — WHEN PAYEE CHARGEABLE WITH NOTICE OF INCAPACITY AND LIABLE TO RESTORATION. The payee of corporate checks who receives them from the treasurer of the corporation in payment of a debt not owed by the corporation, but in payment of one which he has treated as the treasurer's individual debt, where the latter has no actual or apparent authority to issue such checks either in payment of his own debt or that of a third person, is chargeable with notice of his incapacity to issue them and is bound to inquire as to the real situation, and where he accepts the checks without question and draws the money thereon, he is liable in an action by the corporation to recover the amount paid as money received by him to its use.

*Rochester & C. T. R. Co.* v. *Paviour*, 28 App. Div. 623, affirmed.

(Argued June 21, 1900; decided October 2, 1900.)

APPEAL from a judgment of the Supreme Court, entered April 8, 1898, upon an order of the Appellate Division

36

in the fourth judicial department, overruling defendant's exceptions, ordered to be heard in the first instance by the Appellate Division, denying a motion for a new trial and directing judgment for the plaintiff upon a verdict directed by the court.

In 1896, the plaintiff, a domestic turnpike corporation, operated a turnpike which extended from the city of Rochester to the village of Charlotte, and one Marsenus H. Briggs was, and for several years had been, its treasurer. In June, 1896, the defendant, who resided at Rochester, received a letter from Mrs. O. S. Warren, of Silver City, New Mexico, inclosing four fire insurance policies, and requesting him to collect the premiums upon the same. Said policies were issued by various companies, through Mrs. Warren as their agent, to Walter B. Duffy, a prominent business man of Rochester, upon buildings situated in Pyramid, New Mexico. For several years Mrs. Warren had forwarded similar policies on this property to the defendant, who had collected the premiums for her and remitted the same after deducting the amount agreed upon for his compensation. It was his habit to deliver the policies to Mr. Briggs, who paid him the premiums thereon, sometimes in cash and sometimes by the check of Mr. Duffy or of George C. Buell, another prominent business man of Rochester, but never with the check of the plaintiff. The defendant did not know who was liable for the premiums except as he learned it from the policies, and it did not expressly appear what relation Mr. Briggs sustained to the owner of the property insured. Upon the receipt of said letter in June, 1896, the defendant, according to his custom, delivered the policies to Mr. Briggs, and in July two other policies upon the same property were received from Mrs. Warren, which he also delivered to Mr. Briggs, who was a man of repute and a member of a prominent law firm in Rochester. The premiums were not paid at the time either set of policies was delivered; but after payment had been demanded several times by the defendant, Briggs gave him a check on account, dated June 17th, 1896, drawn upon the

Central Bank of Rochester, payable to the order of the defendant, for $150, signed "Rochester & Charlotte Turnpike Road Co. M. H. Briggs, Treas." On the 24th of July following, Briggs gave the defendant a check, similar in all respects, except that it was for the sum of $300, and subsequently he paid the balance of the premiums from his own funds. The defendant deposited these checks in the Traders' Bank of Rochester, where he did his banking business, procured drafts for the amount going to Mrs. Warren, and sent them to her. The checks were paid upon presentation in the ordinary course of business from moneys belonging to the plaintiff on deposit in the Central Bank. This action was brought to recover the amount paid by means of these checks as money of the plaintiff received by the defendant to its use. The plaintiff had no interest in the policies and no business relations with the defendant, and was indebted neither to him nor to Briggs, who used the checks without authority and thus embezzled the money drawn thereby. At the close of the evidence the court directed a verdict for the plaintiff, but ordered the defendant's exceptions to be heard in the first instance by the Appellate Division, which, after hearing the parties, overruled the exceptions and directed judgment upon the verdict in favor of the plaintiff. From said order, as well as from the judgment entered accordingly, the defendant brings this appeal.

*Walter S. Hubbell* for appellant. The defendant had no actual notice of the fraud of Briggs nor was the form of the check sufficient to put him upon inquiry. (*Dike* v. *Drexel,* 11 App. Div. 77; 155 N. Y. 637; *Cheever* v. *P. R. R. Co.,* 150 N. Y. 59; *G. Nat. Bank* v. *State,* 141 N. Y. 379.) Plaintiff's negligence enabled Briggs to perpetrate the fraud and it should, therefore, not be allowed to recover from the defendant. (*N. Y. & N. H. R. R. Co.* v. *Schuyler,* 34 N. Y. 30.)

*James Breck Perkins* for respondent. The trial court properly held that Paviour could not receive the money of

the plaintiff and apply it to the payment of Briggs' indebtedness. (*Gerard* v. *McCormick*, 130 N. Y. 261; *Wilson* v. *M. E. Ry. Co.*, 120 N. Y. 145; *Cheever* v. *P. R. R. Co.*, 150 N. Y. 59.)

VANN, J.    By delivering the policies to Briggs without collecting the premiums at the time, the defendant apparently gave credit for the same and thus made the debt his own. At all events, he subsequently treated it as a debt owing by Briggs to himself, the same as he had similar claims under like circumstances in previous years.    Briggs had no authority, either actual or apparent, to give the checks of the plaintiff in payment of his own debt or that of a third person.    If the defendant knew or believed, or had good reason to believe, that, in giving the checks, Briggs was appropriating the money of the plaintiff to the payment of his own debt, or one that he treated as his own, he had no right to accept them without inquiry.    While he was not bound to be on the watch for facts which would put a very cautious man on his guard, he was bound to act in good faith. (*Second National Bank* v. *Weston*, 161 N. Y. 520, 526; *Cheever* v. *Pittsburgh, etc., R. R. Co.*, 150 N. Y. 59, 66.)    Even if his actual good faith is not questioned, if the facts known to him should have led him to inquire, and by inquiry he would have discovered the real situation, in a commercial sense he acted in bad faith and the law will withhold from him the protection that it would otherwise extend.

The checks themselves gave notice of a suspicious fact and invited inquiry in relation thereto.    They showed upon their face that Briggs was apparently using the money of the plaintiff for his own purposes, since they were not his checks but the checks of a corporation issued by him as its treasurer. In the absence of express authority, or of that which may be implied from past conduct known to the corporation, he could not lawfully use the checks, which stood as its money, for such a purpose, as the defendant is presumed to have known. There was no express authority and nothing to indicate that

Briggs was impliedly authorized to thus use the money of the plaintiff and the presumption was the other way. The plaintiff, as its name indicated, was not a trading corporation but a local plank road company, with no authority to own buildings situated out of the state. It would be extraordinary for a concern which merely operated a short plank road in this state to have any interest in buildings in New Mexico or to be indebted for premiums upon policies issued thereon, and the admitted facts compel us to assume that the defendant so regarded it. Moreover, the policies themselves, as the defendant knew, were not issued in the name of the plaintiff as the owner of the buildings, and there was no connection, apparent or otherwise, between it and the policies. Without inquiry he accepted checks drawn by Briggs as treasurer of the plaintiff in payment of a debt which he had no reason to believe was for it to pay, and which he had strong reason to believe had become the debt of Briggs himself. He called for no explanation from him, made no inquiry at the office of the plaintiff, or of any one representing it, which would naturally have disclosed the fraud, but accepted the checks without question, drew the money and thereby ran the risk of being called upon to restore it.

The facts known to the defendant should have aroused his suspicion and led him, as an honest man, to make some investigation before he accepted the money of a corporation, which owed him nothing, in payment of a claim that he held against some one else. If he had such confidence in Briggs that he was willing to trust him without inquiry, under suspicious circumstances of a substantial character, he must stand the loss, for he failed to discharge a duty required by commercial integrity. He could not confide in Briggs at the expense of the plaintiff, after notice of his irregular and doubtful conduct. Among the heaviest losses in business are those which result from a blind trust in men on account of their standing in the community, without making the investigation required by common prudence. There was a shadow on the checks, and the defendant could not, in good faith, accept them until

it disappeared. By accepting them he did an act which he had reason to believe would affect the rights of a third party, and he could not, in justice to that party, ignore the suspicion which the facts should have aroused. One who suspects, or ought to suspect, is bound to inquire, and the law presumes that he knows whatever proper inquiry would disclose. While the courts are careful to guard the interests of commerce by protecting the negotiation of commercial paper, they are also careful to guard against fraud by defeating titles taken in bad faith, or with knowledge, actual or imputed, which amounts to bad faith, when regarded from a commercial standpoint. (2 Randolph's Com. Paper [2d ed.], § 999 ; 1 Daniel's Negotiable Instruments [4th ed.], § 775 ; 1 Edwards' Bills & Notes [3d ed.], §§ 517, 520 ; 1 Parsons' Notes & Bills, 259 ; Story on Promissory Notes [6th ed.], § 197; Chitty on Bills [8th ed.], 281.)

As the rules of law governing the case are now well settled, we shall refer to but few authorities, and those of recent date in this court. In *Wilson* v. *Metropolitan El. Ry. Co.* (120 N. Y. 145) it was stated, as a general rule, "that one who receives from an officer of a corporation the notes or securities of such corporation, in payment of, or as security for, a personal debt of such officer, does so at his own peril. *Prima facie* the act is unlawful, and, unless actually authorized, the purchaser will be deemed to have taken them with notice of the rights of the corporation." It was also held in that case that the purchaser of a promissory note, purporting to have been issued by a corporation, who made the purchase under circumstances which devolved upon him the duty of inquiry as to its validity, assumed the risk, by failing to inquire, of proving that the facts he could have discovered, had he made inquiry, would have protected him.

In *Gerard* v. *McCormick* (130 N. Y. 261) an agent, who had charge of certain premises known as the " Glass Buildings," deposited the rents collected by him to the credit of a bank account kept in his name as " Agent, Glass Buildings." Without authority he gave a check on this account, signed by

him as "Agent, Glass Buildings," in payment of his own
debt. The check was paid, and upon the trial of an action
brought five years afterward to recover the amount thereof,
there was no evidence of bad faith on the part of the defend-
ant who took the check, except that afforded by the check
itself and the nature of the debt. The court held that the
form of the check was sufficient to indicate to the defendant
the existence of an agency and to put him on inquiry as to
the agent's authority to so use the money. In deciding the
case the court said : " We think that the form of the signa-
ture to the check was sufficient to put the payee on inquiry
as to the right of the agent to pay his personal debt out of
the fund. The buildings and the bank were both well known,
were in the same city and very near to the place where the
check was received by the defendant, and had an inquiry been
made at the bank or at the buildings, it would have been ascer-
tained that the account was held by William Boswell, not as
owner, but as agent for these plaintiffs. In case a person hav-
ing notice that money or property is held by another in a
fiduciary capacity, receives it without inquiry from the agent,
in satisfaction of his personal debt, the sum or property so
received may be recovered by the true owner unless the agent
was authorized to so dispose of it."

In *Cheever* v. *Pittsburgh, etc., R. R. Co.* (150 N. Y. 59,
67) the paper was regular on its face, and this fact protected
the plaintiff, but the court, referring to " a case where an offi-
cer of a corporation makes the corporate obligation payable to
himself, and then attempts to deal with it for his own benefit,"
said : " When paper of that character is presented by the offi-
cer or agent of the corporation, it bears upon its face sufficient
notice of the incapacity of the officer or agent to issue it."
(Citing the *Wilson* and *Gerard* cases, *supra*, and also *Han-
over Bank* v. *Am. Dock & T. Co.*, 148 N. Y. 612 ; *Bank of
New York, etc.*, v. *Am. Dock & T. Co.*, 143 N. Y. 559.) In
the case at bar the appearances were not deceptive, but sug-
gested the true state of affairs, which worked a fraud on the
plaintiff. (See, also, *First National Bank of Paterson* v.

*National Broadway Bank,* 156 N. Y. 459; *Smith* v. *Weston,* 159 N. Y. 194, 199; *Angle* v. *North Western, etc., Ins. Co.,* 92 U. S. 330, 342.)

The case of *Dike* v. *Drexel* (11 App. Div. 77; affirmed without opinion in 155 N. Y. 637), which is relied upon by the defendant, does not conflict with the views herein expressed. According to the facts found in that case a new firm had succeeded an old firm, composed in part of the same members, and with a similar but not identical firm name. The business of the new firm " was apparently the same as and a continuation of that" of the old " and such appearance was a natural result of the conduct and acquiescence of the other members of the new firm, from the formation and during the entire continuance thereof." " In fact the business and assets of the ' old firm ' were so mingled with those of ' the new firm ' as to establish a practical identity between the two firms." The new firm gave certified checks to be applied upon an indebtedness of the old, which the former had not assumed. Said checks were received " in absolute good faith " and collateral securities were surrendered in consequence thereof. Under these peculiar circumstances it was decided that the receiver of the new firm, which had become insolvent, could not recover the money back. Owing to the intimate connection, if not substantial identity, of the two firms, the Supreme Court held that there was nothing suspicious or unusual in paying a debt of the old firm with a check of the new concern, nor any notice that in so doing the funds of the new partnership were being improperly used. It was natural to assume, under the circumstances, that the new firm had bought out the old, and being indebted to it for the purchase price, had paid a part of the debt in this way through the direction of a member common to both, " to whom," as the trial judge found, " the other three partners confided the unrestricted, absolute and entire control and management of the business, allowing him to conduct it as though it were his own, and in its behalf to incur liabilities and dispose of assets absolutely according to his own judgment." Thus it is obvi-

ous that the managing copartner had implied authority from his associates to use the checks as he did, and that the question of notice was not necessarily involved in the decision.

In the case now before us the question of notice is supreme. The checks, when read in the light of the facts known to the defendant, were notice to him that he was apparently accepting money from one to whom it did not belong, and this cast upon him the duty of inquiring into the matter so as to see whether the facts were in accord with the appearances; for, if they were, he knew that he could not honestly take the checks.

The judgment appealed from should be affirmed, with costs.

PARKER, Ch. J., O'BRIEN, BARTLETT, LANDON, CULLEN and WERNER, JJ., concur.

Judgment affirmed.