(55 App. Div. 1.)

JAMES REYNOLDS ELEVATOR CO. v. MERCHANTS' NAT. BANK OF POUGHKEEPSIE.

(Supreme Court, Appellate Division, Second Department.    November 30, 1900.)

1. BANKS AND BANKING—CHECKS—PRINCIPAL AND AGENT—DEBTS OF AGENT—BONA FIDE HOLDER.

 Where a bank, knowing that money deposited with it was the proceeds of insurance on plaintiff's property, accepted checks against such deposit, drawn by the president of plaintiff company payable to his order, and applied the proceeds to the payment of individual notes of such president held by it, plaintiff was entitled to recover such money, since, as defendant took the notes with knowledge of the facts, it was bound to know that no part of such funds could be properly applied to the private debts of the president.

2. INTEREST—DEMAND—MISAPPLIED FUNDS.

 Where a bank, knowing that money deposited with it belonged to plaintiff, accepted checks against such deposit drawn by plaintiff's president, and payable to his order, and applied the proceeds to the payment of individual notes of the president held by it, in an action against the bank to recover such money plaintiff was entitled to interest from the date of the checks.  Since the bank was guilty of a misapplication ab initio, no demand was necessary.

Appeal from judgment on report of referee.

Action by the James Reynolds Elevator Company against the Merchants' National Bank of Poughkeepsie.  From a judgment in favor of plaintiff, entered on the report of a referee, defendant appeals, and to a part plaintiff brings exceptions.  Modified.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, and JENKS, JJ.

Benj. M. Fowler (Frank B. Lown, on the brief), for plaintiff.
Henry M. Taylor, for defendant.

GOODRICH, P. J.   The action is brought to recover the amount of two checks drawn upon the defendant by James Reynolds as president of the plaintiff, the proceeds of which were applied by the bank to the payment of individual debts of Reynolds, on the ground that such application was a misappropriation of the funds of the plaintiff.  Reynolds, prior to January, 1896, was doing business at Poughkeepsie under the name of James Reynolds Elevator Company.  He had a deposit account in that name with the defendant.  For convenience, it is hereafter called the "old account."  The bank, during the early part of the year 1895, had discounted for Reynolds notes made by C. H. Holton, and indorsed "James Reynolds" and "James Reynolds Elevator Co.," and the proceeds were credited in the old account.  These notes were renewed from time to time, and in April, 1898, the bank had two such notes, of $2,000 and $2,500, respectively.  It also had discounted for Reynolds about the same time a note for $1,500, made by him, and indorsed by his wife.  This note had been reduced by payments from time to time to $175.  In January, 1896, the plaintiff's business was incorporated under the name of James Reynolds Elevator Company, all the stock being issued to Reynolds in payment of the property and good will of his business;  but some of the stock was afterwards

sold to outside parties. The company opened an account with the defendant under the name "James Reynolds Elevator Company, Incorporated. New Account." For convenience, this is called the "new account." When this account was opened, the old account was designated on the books of the bank as "James Reynolds Elevator Company Old Account." Thereafter the two accounts were respectively kept and distinguished in that way by the bank. James Reynolds became president, treasurer, and general manager of the plaintiff. The checks on the new account were signed by him as president, instead of as treasurer. In March, 1898, the elevator building and the other property of the plaintiff were destroyed by fire, and the insurance money therefor was collected, and deposited in the bank in the new account, viz. $17,194.43 on April 11th, and $2,772 on April 25th. The bank officers knew of the fire, and that the money thus deposited was the proceeds of the insurance. On April 11th, after business hours, Reynolds presented at the defendant bank a check for $2,500, payable to his own order, and signed "James Reynolds Elevator Co., per James Reynolds, Pres't." It was charged in the new account, and, being indorsed "James Reynolds" and "James Reynolds Elevator Co. old a/c," was at the same interview deposited in the old account, and applied to the payment of one of the Holton notes of that amount held by the bank, and the note was surrendered to him. On April 25th Reynolds drew another check on the new account, for $2,175, to the order of Fonda, cashier of the defendant, signed in the same way as the former check. This was charged to the new account, and received by the bank in payment of the other two notes, $2,000 and $175, which were surrendered to Reynolds. The plaintiff never authorized these checks, and claimed that they were made in fraud of the company, being outside of its business, and that they were received by the bank with full notice of the facts. The issues were referred to Henry E. Loesey, Esq., who found that the defendant was not a bona fide holder of the checks, and had wrongfully and without authority paid out the amount thereof, and misapplied the same. He found, however, that the plaintiff was entitled to recover interest only from the time of the commencement of the action in March, 1899. From the judgment entered thereon the defendant appeals. The plaintiff also appeals from the part which does not allow interest from the date of the checks.

It appeared that during the two years of the plaintiff's business 134 checks similarly signed were drawn by Reynolds on the company account; some of them being to his own order, for sums varying in amount, the largest being $450. There is no evidence as to the objects of all these checks, or whether Reynolds received thereon any money to which he was or was not entitled, except that his salary was $175 per month. But this cannot be construed into a justification of the application of the plaintiff's funds, known to the bank to have been derived from insurance belonging to the company, to the payment of the individual notes of Reynolds. If the payments on the checks had been made to third parties, a very different question would arise. This distinction is recognized in Huie

v. Allen, 87 Hun, 516, 34 N. Y. Supp. 577. It cannot be said that the bank became a holder of the checks without notice of the facts. Certainly, it knew from its own books that the new account was that of the company, and was bound to know that no part of the funds belonging to the company, and therein deposited, could be applied to the private debts of Reynolds. It is well settled that a person who knowingly receives from an agent the money or property of a principal in payment of the agent's debt does so at his peril; and, if the agent acted without authority, the principal may, on proof of these facts, recover his money. In Baker v. Bank, 16 Abb. N. C. 458, an account in the bank stood in the name of "C. A. Wilson & Brother, Agents," but certain moneys were the proceeds of commission sales. The court of appeals, Andrews, J., writing, held that the bank, having notice of the character of the fund, could not appropriate it to the debt of Wilson & Bro., even with the consent of that firm, to the prejudice of the cestuis que trustent. So, in Gerard v. McCormick, 130 N. Y. 261, 29 N. E. 115, 14 L. R. A. 234, an account stood in the name of "William Boswell, Agent Glass Buildings." The court held that while, to entitle a principal to recover money wrongfully paid by his agent upon the debt of the latter, he must show that the creditor knew that the agent was acting in violation of his authority, knowledge that the money was held by him as agent is sufficient to establish this prima facie, as the legal presumption is that an agent has no authority to dispose of the property of his principal in payment of his own debt; and that, therefore, one who receives such payment with knowledge that the money was held by his debtor as agent does so at his peril, and, to defeat a recovery, must show authority in the agent so to dispose of the money.

Similar doctrine is announced in Manhattan Life Ins. Co. v. Forty-Second & G. S. F. R. Co., 139 N. Y. 146, 34 N. E. 776, and in Wilson v. Railroad Co., 120 N. Y. 145, 24 N. E. 384, where the court said (page 150, 120 N. Y., and page 385, 24 N. E.):

"Undoubtedly, the general rule is that one who receives from an officer of a corporation the notes or securities of such corporation in payment of or as security for a personal debt of such officer does so at his own peril. Prima facie the act is unlawful, and, unless actually authorized, the purchaser will be deemed to have taken them with notice of the rights of the corporation."

In First Nat. Bank of Paterson v. National Broadway Bank, 156 N. Y. 459, 467, 468, 51 N. E. 398, 400, 42 L. R. A. 139, 145, the court said:

"Any person who receives property knowing that it is the subject of a trust, and that it has been transferred in violation of the duty or power of the trustee, takes it subject to the right, not only of the cestui que trust, but also of the trustee, to reclaim possession of the property. Knowledge of the trustee's violation of the trust conditions will be chargeable to the person dealing with him if the facts were such as, in reason, to put him upon inquiry, and to require him to make some investigation, as the result of which the true title and authority of the trustee might have been disclosed. He will then be regarded as having constructive notice of the terms of the trust, whence the trustee derives his power to act."

A still more instructive case is that of Claflin v. Bank, 25 N. Y. 293, where it was said (pages 298, 299):

"A bona fide holder of commercial paper must receive the same in the usual course of business, for value, and without any notice of facts tending to impeach the character or validity of the paper as between the original parties. The plaintiffs cannot claim the protection of this rule. They had distinct notice, by the face of the certificate and the signature thereto, that the acceptance was improper, and irregularly made. It was patent on the face of the paper that the acceptance was a fraud; that the president of the defendant's bank, in accepting such checks, was violating his duty, and using his official character for his personal benefit, and thereby perpetrating an act of dishonesty, in palpable violation of his trust. No business man of common intelligence could take these checks in good faith, and without suspicion or notice of this fraud. Upon this distinct fact I would hold that the plaintiffs are not bona fide holders of these checks, and are not entitled to recover the same of the defendants."

Dike v. Drexel, 11 App. Div. 771, 42 N. Y. Supp. 979, cited by the defendant, is easily distinguishable from the case at bar. That decision was put upon the ground that the defendants' firm had no "actual knowledge that the money obtained on the checks in question belonged to the firm of Field, Lindley, Wiechers & Co., and all the knowledge on that subject that they are to be charged with is such as was to be inferred from the face of the checks in question." But in the present case the bank had "actual knowledge" of the plaintiff's ownership of the insured property, and the destruction of it by fire, and, being depositary of the checks of the insurance company for the insurance money, knew that the insurance, through checks to the plaintiff's order, had come into its possession. The bank was thereby charged with knowledge that the insurance money belonged to the plaintiff, and not to James Reynolds individually. This is made clear by the pleadings, the evidence, and the finding of fact by the referee. It was alleged in the answer that:

"For a long time before the formation of plaintiff's corporation the said James Reynolds had carried on business under the same name and style of James Reynolds Elevator Company, and as such did business with, and was a depositor with, this defendant; that the plaintiff, upon its formation, acquired the property, real and personal, belonging to and used in the said business carried on under the name of James Reynolds Elevator Company, and thereafter carried on the same business at the same place of business and under the same name of James Reynolds Elevator Company."

There was evidence that at the first meeting of the directors of the plaintiff a proposition was made by James Reynolds, and accepted by the plaintiff corporation, by which, for the consideration of $50,000, he sold and conveyed by deed to the corporation the elevator property, and by bill of sale his stock of goods and merchandise and other personal property used in his business, and that the entire corporate stock was issued to him therefor. It was admitted:

"That the building of the James Reynolds Elevator Company, Incorporated, located corner Garden and North streets, in the city of Poughkeepsie, and the stock of goods and machinery therein contained, were destroyed by a fire on the 22d of March, 1898, and that the real estate so destroyed is the same real estate described in the deed, offered in evidence by James Reynolds to the corporation, and that $18,810 of insurance was paid on the stock of goods, and $364.43 on the horses in the adjoining building, and $792 on the machinery,— all of which was paid on or prior to April 25, 1898,—and that $11,500 of insurance on the building was paid after the 25th of April, 1898, and all the insur-

ance money received for stock, horses, and machinery, amounting to $19,966.43, was deposited in the Merchants' Bank."

The referee found as matter of fact:

"(8) That the fact of the fire as aforesaid, and that the moneys so received and deposited as last above found, were for insurance upon property of the plaintiff so destroyed, were known to the officers in charge of the business of the defendant at its banking house when said moneys were received."

Since the foregoing opinion was written, a recent number of the official series has been received, containing the opinion of the court of appeals announcing the same doctrine in Railroad Co. v. Paviour, 164 N. Y. 281, 58 N. E. 114, where it was held that the payee of corporate checks who receives them from the treasurer of the corporation in payment of a debt not owed by the corporation, but in payment of one which he has treated as the treasurer's individual debt, where the latter has no actual or apparent authority to issue such checks either in payment of his own debt or that of a third person, is chargeable with notice of his incapacity to issue them, and is bound to inquire as to the real situation; and where he accepts the checks without question, and draws the money thereon, he is liable in an action by the corporation to recover the amount paid as money received by him to its use.

The doctrine deducible from all these cases is abundant support for the conclusions of the learned referee respecting the liability of the defendant as to the principal amount involved. But we think he was in error in refusing to allow interest before demand; that is, the commencement of the suit. It is a corollary to his main proposition that the bank was guilty of misapplication of the plaintiff's funds ab initio, and in such cases no demand is necessary. Marshall v. De Cordova, 26 App. Div. 615, 50 N. Y. Supp. 294; Howard v. France, 43 N. Y. 593. The judgment should be modified by adding interest on each check from its date, and, as modified, affirmed.

Judgment modified in accordance with opinion of GOODRICH, P. J., and, as modified, affirmed, without costs of this appeal to either party. All concur.