MANHATTAN WEB CO. v. AQUIDNECK NAT. BANK.

(Circuit Court, D. Rhode Island. November 10, 1904.)

No. 2,715.

1. CORPORATIONS—USE OF FUNDS BY TREASURER FOR PRIVATE PURPOSES—PRESUMPTION OF AUTHORITY.

Where the treasurer of a corporation draws a check in its name, which he uses in payment of his individual notes, in the absence of circumstances giving rise to a reasonable inference of authority to do so the payee is put upon inquiry, and charged with notice of all the rights of the corporation, there being no presumption of authority to use its funds for such purpose from the mere fact that they are so used.

2. SAME—PAYMENT OF NOTE OF THIRD PARTY.

The use of the funds of a corporation by its treasurer in the payment of notes of a third person is not beyond the apparent scope of his authority so as to entitle the corporation to recover the money, where it was accepted in good faith, without notice of any want of authority, and especially where the relation between the maker of the notes and the corporation was such as to warrant the belief that the payment was authorized.

3. SAME—RECOVERY OF UNAUTHORIZED PAYMENT—ESTOPPEL.

Where a bank which held individual notes of the treasurer of a corporation received a check of the corporation signed by him as treasurer, with directions to apply the proceeds in payment of the notes, and did so, surrendering the notes with its rights against indorsers and collateral security which it held, without any inquiry as to whether the payment was authorized by the corporation, which would have disclosed that it was not, the corporation is not estopped from recovering the money by the fact that no demand therefor was made for four years, although the check was entered on its passbook, and was itself returned by the bank, with other canceled checks, soon after the transaction.

At Law. On defendant's motion for a new trial.

Edwards & Angell and Wm. R. Martin, for plaintiff.

Wm. P. Sheffield, Jr., for defendant.

BROWN, District Judge. The Manhattan Web Company, a corporation of New Jersey, was a depositor in the defendant bank. Its treasurer, E. Read Goodridge, drew against its account a check for $7,750, dated February 20, 1900, payable to the order of E. Read Goodridge, and signed "Manhattan Web Co., E. Read Goodridge, Treasurer." This check, indorsed, "Pay Aquidneck Nat. Bank or order E. Read Goodridge," was sent by Goodridge to Hopkins, cashier of the bank, in a letter directing the application of the check to the payment of six notes then held by the bank. The bank followed instructions, and charged the check against the plaintiff's account. Four of these notes, amounting to $5,150, were notes of E. Read Goodridge for his personal indebtedness to the bank. Two of the notes were signed, "Manhattan Web Co., E. Read Goodridge, Treas.," and were indorsed, "Manhattan Web Co., E. Read Goodridge, Treas.," "H. L. R. Goodridge," and "E. Read Goodridge." These two notes were dated, respectively, November 7 and November 20, 1899. The plaintiff offered evidence to the effect that these two notes were made by the Manhattan Web Company of New York, and were not notes of the plaintiff, the Manhattan Web Company of New Jersey. Upon a trial with a jury a verdict was rendered against the bank for the full amount of $7,750. The bank now petitions for a new trial.

The plaintiff contends that it is well settled as a matter of law that, where an agent draws a corporation note or check payable to himself, and uses it to pay his individual debts or debts of third parties, the payee takes with notice of the fraud, and the burden is cast upon him to establish by proof that the act was authorized or ratified by the corporation; citing the following cases: Rochester & Charlotte Turnpike Road Co. v. Paviour, 164 N. Y. 281, 58 N. E. 114, 52 L. R. A. 790; Campbell v. Manufacturers' National Bank, 67 N. J. Law, 301, 51 Atl. 497, 91 Am. St. Rep. 438; Gale v. Chase National Bank, 104 Fed. 214, 43 C. C. A. 496; Cohnfeld v. Tanenbaum, 176 N. Y. 126, 68 N. E. 141, 98 Am. St. Rep. 653; Randall v. R. I. L. Co., 20 R. I. 625, 40 Atl. 763; New York I. Mine v. First National Bank, 39 Mich. 644; Reynolds El. Co. v. Merchants' National Bank, 55 App. Div. 1, 67 N. Y. Supp. 397; Gerard v. McCormick, 130 N. Y. 261, 29 N. E. 115, 14 L. R. A. 234. While there is a question whether this rule is not too broadly stated, since perhaps it would not be an unusual business transaction for a treasurer to draw corporate funds for his own salary, and to deposit them in his own account subject to check for his private bills, yet the cases cited are at least sufficient to justify the propositions that, where a treasurer of a corporation draws and uses its funds for private purposes, in the absence of circumstances giving rise to a reasonable inference of authority to do so, the bank is put upon inquiry; and that a presumption of a treasurer's authority to apply corporate funds to his private purposes does not arise from the mere fact that he does so apply them.

As to the individual notes of Goodridge, there apparently was no fact, additional to the assumption of authority by the treasurer, to give rise to any fair inference of special authority to use the funds of the corporation to pay his individual notes.

As to the application of the corporate funds to the payment of the notes of the Manhattan Web Company of New York a very different question arises. This was not, on its face, an application of the funds to the treasurer's private use; and I think it cannot be said, as a matter of law, that the payment of a note of a third person is prima facie illegal, or apparently without the scope of the authority of a treasurer conducting the business of a corporation. Even if the bank officers knew that the Manhattan Web Company of New Jersey and the Manhattan Web Company of New York were distinct corporations, and were ignorant of their relations, they were not bound to inquire as to the special authority of a treasurer having general authority over the funds. In the absence of notice that he was appropriating the funds to his own or to unauthorized purposes, they might fairly assume his authority to direct the payment of money to a third person. As a matter of evidence, however, the similarity of the names, officers, and stockholders of the two corporations, and information that one was about to succeed the other, would bring this branch of the case within the doctrine of Dike v. Drexel, 11 App. Div. 77, 42 N. Y. Supp. 979, affirmed 155 N. Y. 637, 49 N. E. 1096, cited in Rochester & C. T. R. Co. v. Paviour, 164 N. Y. 281, 58 N. E. 114, 52 L. R. A. 790. I am of the opinion that the evidence did not warrant a finding that there was apparently no authority to pay the notes of the Manhattan Web Company of New York, and that this was prima facie illegal.

The defendant relies upon the fact that after paying the check of February 20, 1900, for $7,750, the bank, on April 2, 1900, made up the passbook of the plaintiff, showing the withdrawal, and sent it, with the check vouchers, to the plaintiff, and that it was retained without objection until 1904, when suit was brought. It is contended that the plaintiff failed in its duty of reasonable diligence to examine its account and to give notice of irregularities within a reasonable time; citing Leather Mfrs. Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811. The applicability of this doctrine to the present case is very doubtful. The bank knew at the outset that money was to be used to pay Goodridge's individual debts. Without inquiry it at once surrendered its rights against indorsers of the old notes and its collateral security as well. Knowing the facts, it could not complain because it was not informed of them by the plaintiff. The bank did what was prima facie unlawful—surrendered its security—and then communicated the fact through the passbook and vouchers. There is a clear distinction between a case where a bank unwittingly has taken a forged check and the depositor has failed to give the bank timely information of the forgery, thus acting negligently, and preventing the bank from taking steps for its protection, and the present case. In Leather Manfrs. Bank v. Morgan, 117 U. S. 96, 112, 6 Sup. Ct. 657, 663, 29 L. Ed. 811, it was said:

"Of course, if the defendant's officers, before paying the altered checks, could, by proper care and skill, have detected the forgeries, then it cannot receive a credit for the amount of these checks, even if the depositor omitted all examination of the account."

This is applicable to the present case. The bank knew the facts, and knowingly gave up its securities. This either cut it off from all recourse against the original parties to the old notes, or it could at will seek to

cancel the transaction. If it chose to wait, in the hope that the plaintiff would not object, its delay in proceeding against the original indorsers and original collateral is voluntary, and not caused by neglect of any duty of the plaintiff.

While the finding of the jury is substantially correct as to the sum of $5,150, the amount of Goodridge's individual notes, I am of the opinion that the instructions as to the notes of the Manhattan Web Company of New York were not sufficiently favorable to the defendant, and that the verdict as to those notes, amounting to $2,600, is against the evidence.

Petition for a new trial granted, unless the plaintiff shall within 10 days file a remittitur as to $2,600. If such remittitur is filed, the plaintiff may take judgment for $5,150.