UNITED STATES v. BOLOGNESI et al.

(Circuit Court, S. D. New York. August 18, 1908.)

POST OFFICE—MONEY ORDERS—LIABILITY OF RECIPIENT.

Whoever deals with an agent of the United States must assure himself of the agent's authority, and one in whose favor a postmaster or postal clerk issues a money order, without first receiving an application and payment therefor as required by law, is liable to the United States for its value, although he may have paid such agent in good faith in other ways the full value of the order.

On Demurrer to Answer.

Felix Frankfurter, for the United States.
Mayer & Gilbert, for defendants.

WARD, Circuit Judge. The United States seeks to recover from the defendants the amount of postal money orders fraudulently issued by one Marone, the clerk in charge of station 102 of the Brooklyn post office, to them as payees; Marone not having first received any applications or payments therefor, as required by the statutes of the United States and the regulations of the Post Office Department. The answer of the defendants contains a separate defense, which admits the foregoing facts, but alleges that they paid Marone in good faith in the regular course of business the full value of the money orders in foreign money, having no knowledge that he had fraudulently issued the same. The United States demurs to this defense as insufficient in law on the face thereof and not stating facts sufficient to constitute a defense.

It will be noticed that the defense avers no inquiry by the defendants, or any affirmative action whatever. It must, therefore, be construed as alleging only that they had no knowledge of or complicity in Marone's unfaithfulness. But the transaction set forth was so unusual as to require active inquiry on their part as to Marone's authority. An agent of the government was giving to them its promises to pay, executed by him, in settlement of his individual debts. On what theory could they have supposed that he would prefer to pay the United States for money orders in their favor, rather than to pay them in cash? The defense states what was done, and even in an action between individuals on a negotiable instrument, if such a state of facts were proved at the trial, it would be the duty of the court to direct a verdict for the plaintiff. Rochester & Charlotte Company v. Paviour, 164 N. Y. 281, 58 N. E. 114, 52 L. R. A. 790; West St. Louis Savings Bank v. Shawnee Company, 95 U. S. 557, 24 L. Ed. 490.

But the government stands in a more favorable position as to the actions of its agents than does an ordinary principal. Whoever deals with its agent must assure himself of the agent's authority. This arises out of public policy, protecting it against the tremendous responsibilities that might be imposed on it by faithless agents, whom it cannot oversee as individuals can oversee their agents. Judge Brewer discusses this subject in United States v. Stockgrowers' Na-

tional Bank (C. C.) 30 Fed. 912, in relation to post office money orders. It is true that he holds them to be nonnegotiable, but what he says in this regard is as true of negotiable instruments. A bona fide holder of a government negotiable instrument is not protected against want of authority of its agent to execute it. The Floyd Acceptances, 7 Wall. 666, 19 L. Ed. 169. In that case bona fide holders without notice of acceptances of the Secretary of War were held not entitled to recover against the government because of his want of authority to accept.

Section 4030, Rev. St. U. S. (U. S. Comp. St. 1901, p. 2742), makes any postmaster who issues a money order without first having received the money therefor guilty of a misdemeanor. This is notice of the limitation of his authority. Besides, the defendants admit in the defense demurred to that Marone's authority was to issue money orders "upon properly prepared application therefor and upon previous receipt of proper sums of money therefor," and that he "fraudulently neglected and failed to so comply with the laws and regulations governing the issuance of money orders, and appropriated to his own use the moneys paid him in good faith by the defendants, as above set forth."

But the defendants contend that the government, in issuing money orders, has entered into the domain of commerce, and therefore, under the Case of Cooke, 91 U. S. 389, 23 L. Ed. 237, is bound in respect to the money orders exactly as an individual would be. In the Cooke Case the subject of inquiry was the government's own negotiable notes issued to raise money. The transaction was purely commercial, and it was held that if the notes in question were genuine—that is, had been properly executed by authorized officers—they would be good in the hands of bona fide holders, even if wrongfully issued by government officials. This does not apply to the money orders under consideration, which were not genuine in this sense at all, because Marone had no authority to execute them.

Besides, I think that the money order system is not a business in a commercial sense, but a branch of the governmental function of carrying mails. It does not contemplate borrowing money for the benefit of the government, and is not carried on for a profit, but solely for the convenience of the public, to enable credits, not exceeding $100, to be transmitted through the mails instead of inclosing money, for loss of which the government would not be responsible.

The demurrer is sustained.