### UNITED STATES v. BOLOGNESI et al.

(Circuit Court, S. D. New York.   April 22, 1909.)

Post Office (§ 18*)—Money Orders—Liability of Recipient for Orders Illegally Issued.

> It is no defense to an action by the United States to recover the amount paid in redemption of postal money orders from the payees to whom they were paid, and to whom they were issued by a post office clerk without authority and in violation of law, without first receiving applications and payment therefor, that defendants took such orders in good faith from said clerk in payment of sums justly due them from him as a banker, or that their invalidity did not appear from their face.

[Ed. Note.—For other cases, see Post Office, Dec. Dig. § 18.*]

On Demurrer to Amended Answer.

Felix Frankfurter, for trustees.

Mayer & Gilbert, for defendants.

WARD, Circuit Judge.   A demurrer to the separate defense, in the answer in this case having been sustained (164 Fed. 159), the defendants served an amended answer containing a separate defense, to which the government has again demurred.   The new allegations in the amended answer are intended to show the inquiry which the defendants made with reference to Marone's authority, although a banker, to issue money orders as a post office clerk, and, further, what means the defendants had of ascertaining whether Marone had deposited funds to cover the money orders, and are as follows:

"(14) That in or about the year 1904 the post office inspectors made inquiry into the business dealings of the said Marone with these defendants, and made inquiry into the issuance of the large number of money orders, above referred to, to these defendants, and as early as the year 1904 said post office inspectors had actual knowledge of the fact that Marone had these dealings with these defendants and paid these defendants in money orders issued by him as post office clerk, acting for the said Roberts as Brooklyn postmaster, and had actual knowledge of the fact that the said Marone had continued his business as banker, dealer in foreign money, and dealer in transportation tickets, and at that time called upon these defendants and were informed of all of the facts, but made no objection thereto, and, on the contrary, the said post office inspectors assured the defendants that the transactions were in every respect right and proper.

"(15) That subsequently thereto these defendants inquired of one of the auditors in the Post Office Department of the plaintiff government as to the practice pursued by Marone, and were assured by the said auditor that there was no reason why the said Marone as a banker could not pay these defend-

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ants by money orders issued by him as post office clerk, acting for said Roberts as said Brooklyn postmaster. Said auditor is an employé (or clerk) in the New York post office, charged with auditing and checking the accounts of the said post office, and all the determinations and actions of said auditor are subject to control and review by the Auditor of the Post Office Department at Washington. * * *

"(17) * * * That it ·was impossible for these defendants to tell from the face of the money orders themselves that any one or more of the money orders delivered to them and payable to them were defective in any way; that they were all issued over the name of Roberts as Brooklyn postmaster, all initialed by the letter "M," all upon the official money order blanks of the United States government, and were all signed by the person authorized to sign and issue the same; and no person could by any possibility, from an examination of these money orders, discover any defect therein upon their face. * * *

"(19) Defendants further allege that the records of the Post Office Department and of the various branch post offices are not public records, and are not subject to public inspection, and that it was not possible at any time during the period in question for these defendants to have examined in person any records, papers, applications, or documents in the office of the Brooklyn postmaster or in station 102, so as to discover whether proper application had been filed for money orders issued payable to these defendants, or whether the proper sums of money were deposited with the postmaster or the clerk in charge of the branch post office for said money orders. On the other hand, however, the post office inspectors did have access to all of said records, and it was their duty to inspect and examine the same."

The government contends that these allegations constitute no defense, because, first, money orders not being negotiable instruments (United States v. Stock Growers' National Bank [C. C.] 30 Fed. 912; Fine Arts Society v. Union Bank of London, L. R. Q. B. Div. 705), it can show against any holder of them that they were issued in violation of law; second, that, even if they are negotiable, they are so only after having been transferred by the payee, and that they are subject to any defense the government has in the hands of the defendants, who are themselves the payees. Section 60 of the negotiable instruments law (Laws N. Y. 1897, p. 728, c. 612) provides:

"Sec. 60. What constitutes negotiation.—An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder completed by delivery."

I agree with these propositions, and, as the money orders were concededly issued by Marone in violation of law, the inquiry and the circumstances set forth in the amended answer constitute no defense to the government's claim. The allegations contained in articles 14 and 15 show that the government inspectors and the government auditor in the New York post office assured the defendants that Marone, although a banker, could lawfully pay them with money orders issued by him; but this must be taken subject to the condition that he deposited funds to cover the money orders as required by law. The allegations in articles 17 and 19 that the defendants could not tell from the money orders themselves that Marone had not deposited funds to cover them, and could not examine the records in the post office to ascertain that fact, even if admitted by the demurrer, seem to me to make no difference in the result.

·The demurrer is sustained.