HERRING v. HUNT.

## Opinion delivered June 15, 1925.

1. CORPORATIONS—OFFICER DIVERTING CORPORATE FUNDS.— One receiving a check from an officer of a corporation, drawn against the corporation's bank account in payment of an individual debt of the officer, with knowledge that the corporation's funds are being thus misappropriated, becomes liable to the corporation for money thus received.

2. CORPORATIONS—KNOWLEDGE OF DIVERSION OF CORPORATE FUNDS.— Though acceptance of a check against corporate funds in payment of an individual debt of an officer of the corporation raises a presumption of knowledge that the corporation's funds are being misappropriated, such presumption may be rebutted, and the burden of proving knowledge of such appropriation is on the party asserting such fact, and before one accepting a check would be liable to creditors of the corporation he must have had knowledge that the money received was property of the corporation.

Appeal from Sebastian Circuit Court, Fort Smith District; *John E. Tatum,* Judge; affirmed.

*Irving C. Neale,* for appellant.

*Chew & Ford,* for appellee.

SMITH, J.· The Hunt-Cain Hardware Company, a corporation which had been engaged in business at Miami, Oklahoma, made an assignment on February 20, 1922, under the laws of that State, for the benefit of its creditors, and L. B. Herring was named as assignee. After his appointment and qualification the assignee wound up the affairs of the corporation and collected its assets, which were by him distributed to the corporation's creditors, and which, according to his testimony, were sufficient to pay only about 35 per cent. of the claims of the creditors. The assignee then brought this suit, and alleged that E. C. Cain, a stockholder and officer of the corporation, had misappropriated the assets of the corporation by paying to appellee R. T. Hunt funds known to belong to the corporation in satisfaction of a personal obligation due Hunt by Cain.

The testimony offered in the case in support of these allegations was to the following effect: Hunt had been engaged in the hardware business at Miami, and sold a

half interest in the business to Cain, after which the business was incorporated as the Hunt-Cain Hardware Company. Later Hunt sold to Cain his remaining half interest in the corporation, and in payment of the balance due on the sale of this stock Cain remitted to Hunt three checks payable to Hunt's order as follows: One dated June 15, 1921, for $350; one dated August 5, 1921, for $864.61; and one dated August 27, 1921, for $204. These checks were drawn on a bank in Miami, Oklahoma, and were signed: "Hunt-Cain Hardware, by Edgar Cain, Secy. & Treas." These checks were indorsed by Hunt and deposited by him in a bank in Fort Smith, where Hunt was then living and in business, and were paid by the bank upon which they were drawn, and the cashier of that bank testified that when paid the checks were charged to the hardware company's account.

The name of this corporation appears to have been signed both as the Hunt-Cain Hardware Company and as Hunt-Cain Hardware, but the identity of the corporation under both names does not appear to be questioned.

Hunt testified that, after having been in business in Van Buren thirty-five years, he removed to Miami in 1918, and engaged there in the hardware business, in which he invested $15,000. Soon thereafter he sold Cain a half interest in the business for $7,500, of which $2,000 was paid in cash and the balance of $5,500 was divided into monthly payments, the number of which was not stated. The business was then incorporated with a capital stock of $14,000, but the assets of the company amounted at that time to about $19,000, of which $5,000 was invested in fixtures, $3,000 in accounts, and the balance in a stock of hardware. At this time Hunt and Cain regarded themselves as equal owners of the business, although the wife of Cain had stock to qualify her as an incorporator.

Two months after the sale of this half interest Hunt sold Cain the remaining half for $7,500, of which $5,000 was paid in cash, and the balance was evidenced by notes. He admitted that he received and cashed the checks in

question, but testified that he paid. no attention to them except the amounts thereof and did not know where the money was coming from with which they were paid. Hunt further testified that he supposed that both Cain and the corporation were solvent, and he did not realize or know that Cain was using corporate funds with which to pay the individual debt of Cain due him. In other words, if Hunt's testimony is to be credited—and its truth was, of course, a question for the jury—he assumed that Cain was in effect and in fact the sole owner of the business of the Hunt-Cain Hardware Company, and further assumed that both Cain and the hardware company were solvent and cashed the checks without having his attention called to the manner in which they had been drawn.

The court charged the jury at the request of the plaintiff that a person who accepts a check which, on its face, purports to be drawn on the funds of a corporation by an officer thereof in payment of the personal debt of the officer drawing the check must ascertain whether such officer had authority to so divert and use the corporate funds, and that the payee of such a check receives and cashes it at his peril and is subject to be required to account for the proceeds thereof if the check was drawn without authority and the funds of the corporation were thus misappropriated.

The plaintiff requested an instruction numbered 3 reading as follows: "You are instructed that an officer of a corporation has no right to use the funds of the corporation to pay his personal debts, and any one accepting the funds of said corporation from an officer in payment of the officer's personal debt does so at his peril." The court gave this instruction after adding, at the end thereof, a qualifying clause reading as follows: "but he must have known that the money was the property of the corporation before he would be bound thereby." An exception was saved to this modification, and the correctness thereof presents what we regard as the controlling question in the case, although other questions are argued.

It is the law that if one receives from an officer of a corporation a check drawn against the corporate bank account, in payment of the individual debt of the officer drawing the check, with knowledge that the funds of the corporation are being thus misappropriated, he becomes liable to the corporation for the money thus received. And the court so instructed the jury. Section 642, chapter on Corporations, in 7 R. C. L., p. 640; *Rochester, etc., Turnpike Road* v. *Paviour,* 164 N. Y. 281, 52 L. R. A. 790, and cases cited in the annotator's note.

The court also charged the jury in the first instruction from which we have quoted that one receiving the check of a corporation in payment of the personal obligation of the officer of the corporation drawing it is put upon notice that he may be held liable for receiving misappropriated funds. But we think the court was not in error in modifying instruction numbered 3 by requiring the jury to find that Hunt knew the funds of the corporation were being misappropriated.

One who is the beneficiary of such misappropriation may be called upon to restore the funds so received. And, if it be said that the acceptance of a check drawn as were the checks in question raises the presumption that the party accepting it knows that the funds are being misappropriated, this is a rebuttable presumption, and the burden upon the whole case to show that the payee in the check has knowledge of the misappropriation is upon the party asserting that fact. It was not error, therefore, for the court to modify the instruction numbered 3 by adding the clause that Hunt must have known that the money which he received on the checks was the property of the corporation before he would be bound thereby, and this is true, although the form of the checks *prima facie* imputed such knowledge.

Having concluded that the testimony is legally sufficient to support the finding of the jury that Hunt did not know that the funds of the Hunt-Cain Hardware Company were being misappropriated, it follows that the judgment should be affirmed, and it is so ordered.