## LANNING v. TRUST CO. OF AMERICA.

(Supreme Court, Appellate Division, First Department.　April 15, 1910.)

1. CORPORATIONS (§ 430\*)—MISAPPROPRIATION OF FUNDS—REPAYMENT OF PERSONAL DEBT BY OFFICER.

A creditor who receives from an officer of a corporation its money or property in payment of a personal debt does so at his peril, and, if he knows, or facts are presented which, if acted on, would disclose, that the officer was misappropriating corporate funds, he is liable to it for the amount received.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1740, 1741; Dec. Dig. § 430.\*]

2. CORPORATIONS (§ 430\*)—MISAPPROPRIATIONS OF FUNDS—PAYMENT OF PERSONAL DEBT BY OFFICER.

A trust company which received in part payment from a debtor a check on itself for more than $35,000 payable to its own order, signed by the treasurer of a corporation of which its debtor was president, knowing at the time that its capital stock was $100,000, and that it had little or no surplus, was charged with notice of an authorized use of the funds against which the check was drawn; and it is liable to its receiver for the amount of such check.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1741; Dec. Dig. § 430.\*]

Appeal from Trial Term, New York County.

Action by John E. Lanning, as receiver of the Monmouth Trust & Safe Deposit Company, against the Trust Company of America. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals.　Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, MILLER, LAUGHLIN, and DOWLING, JJ.

Joseph M. Hartfield, for appellant.
A. B. Boardman, for respondent.

McLAUGHLIN, J.　On the 19th of January, 1903, the Monmouth Trust & Safe Deposit Company, a foreign corporation, had on deposit a little over $35,000 with the North American Trust Company, a domestic corporation, which has since been merged with the defendant. On the day mentioned the president of the Monmouth Company, one Twining, being indebted to the trust company for upwards of $50,000, presented to it in payment of his indebtedness two checks, one for $35,048.77 drawn by the Monmouth Company upon the trust company.　The check was made payable to the order of "Yourselves," and signed by David C. Cornell, treasurer of the Monmouth Company. The trust company accepted the check, extinguished Twining's indebtedness to the amount of it, and charged the same to the Monmouth Company.　This action is brought to recover the amount of the check, upon the theory that the funds of the Monmouth Company were misappropriated by Twining, and the trust company had notice of that fact when it received the check.　At the trial the defendant had a verdict, and from the judgment entered thereon, and from an order denying a motion for a new trial, the plaintiff, as receiver of the Monmouth Company, appeals.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

There is very little dispute between the parties as to the material facts involved. It appears that in the latter part of the year 1902 Twining owned 400 shares of stock of the First National Bank of Asbury Park, N. J., and he applied to the trust company for a loan sufficient in amount to enable him to purchase 350 additional shares. Some one acting on behalf of the trust company suggested that, if the Monmouth Company would become a depositor with the trust company, Twining's application might receive a more favorable consideration than it otherwise would. The Monmouth Company accordingly opened an account with the trust company to be drawn upon over the signatures of either Twining or Cornell. Shortly thereafter, and on the 11th of November, 1902, the trust company entered into an agreement with Twining, by which it agreed to loan to him a sum sufficient to purchase the 350 shares of bank stock referred to (not exceeding a specified price per share) upon his delivering to it as collateral security for the payment of the sum loaned the shares so purchased, together with the 400 shares which he already had. Twining agreed to pay the sums loaned within 60 days from the date of the agreement, which was in writing. He deposited the 400 shares with the trust company, and, as he purchased additional shares, drew checks payable to the Monmouth Company upon the trust company for the amount paid, which he deposited to his credit with the Monmouth Company, accompanied by the stock purchased. The Monmouth Company forwarded the checks and stock to the trust company, and it paid the same by crediting the amounts to the Monmouth Company, and charging the same as money loaned to Twining under the agreement with him. On the 12th of January, 1903, the amounts loaned in this way aggregated something over $50,000, and the trust company, under the agreement, demanded payment. The demand not having been complied with, on the 14th of January it gave Twining notice that the stock would be sold at auction to pay the loan, but, before the sale took place, he paid the loan in the manner described, and the trust company returned to him the stock which it held. Shortly thereafter it was discovered that the Monmouth Company was insolvent. A receiver was appointed, who notified the trust company that Twining had used the check for $35,048.77 of the Monmouth Company to pay his individual debt, and demanded that the trust company repay that amount with interest, on the ground that it had notice of that fact. At the trial the court held that the mere fact that the check was drawn upon the funds of the Monmouth Company did not require the trust company to investigate Twining's authority to use it in payment of his individual debt, since it was signed by Cornell, the treasurer of the company, and was regular upon its face. Accordingly the plaintiff was not permitted to show how Twining obtained possession of the check, nor any other facts not brought to the knowledge of the trust company.

In thus ruling I think the learned trial court erred. Upon the uncontradicted facts I think a verdict should have been directed for the plaintiff. One who receives from an officer of a corporation its money or property in payment of his personal debt does so at his peril, and if the person receiving the same knows, or facts are presented which, if acted upon, would disclose that such officer was thereby misappropri-

ating the funds of the corporation, he is liable to it for the amount so received.   Ward v. City Trust Company, 192 N. Y. 61, 84 N. E. 585; Rochester & Charlotte Turnpike R. R. Co. v. Paviour, 164 N. Y. 281, 58 N. E. 114, 52 L. R. A. 790; Wilson v. Metropolitan El. Ry. Co., 120 N. Y. 145, 24 N. E. 384, 17 Am. St. Rep. 625; Havana Central R. R. Co. v. Knickerbocker Trust Co., 135 App. Div. 313, 119 N. Y. Supp. 1035.   The defendant knew it was receiving a check of the corporation in payment of Twining's individual indebtedness.   Does the fact that it was not signed by Twining, but by another officer, under the facts and circumstances here presented, take the case out of the general rule?   I think not.   The defendant knew, because it was so informed when it agreed to make the loan to Twining that the capital stock of the Monmouth Company was $100,000, and it had little or no surplus. The amount of the check, the payee named in it, and the fact that it was being used to pay the personal debt of the president of the corporation was notice to the trust company, in the absence of any other evidence bearing on the subject, of an unauthorized use of the funds. It was payable directly to the trust company, and therefore showed upon its face that Twining had no title or interest in the moneys which it represented.   Sims v. United States Trust Co., 103 N. Y. 472, 9 N. E. 605; Hathaway v. County of Delaware, 185 N. Y. 368, 78 N. E. 153, 13 L. R. A. (N. S.) 273, 113 Am. St. Rep. 909.

In the case last cited one Woodruff, a former county treasurer, being indebted to the county, obtained from the plaintiffs, by means of a forged note, a check for the amount of his indebtedness, payable to his successor, which he presented to the latter in payment thereof.   In holding that the plaintiffs could recover the amount of the check which they had paid Cullen, Ch. J., said:

"The check was drawn by the plaintiffs to the order of the defendant.   It imported on its face that the money represented by it was the property of the plaintiffs, and that they, not Woodruff, were paying it to the defendant. * * * Woodruff had no apparent title to the check.   He was merely the agent of the plaintiffs for the purpose of delivering it to the defendant."

Here the check was payable to the order of the trust company.   It was notice that the Monmouth Company, and not Twining, was making the payment to the trust company, and the fact that it was signed by another officer in no way altered the situation.   Squire v. Ordemann, 194 N. Y. 394, 87 N. E. 435.   Twining had no actual or apparent authority to direct the trust company to apply the proceeds of the check payable to its order to the payment of his individual indebtedness, and, when he did so, it was notice to the trust company that he was using the funds of the Monmouth Company to pay his personal debt.   The effect of such notice is discussed in Ward v. City Trust Co., supra.   There the president of a corporation delivered to the defendant a check payable to the order of the corporation, indorsed by himself as president, in payment of the individual debt of himself and another officer.   The court in reversing a judgment for the defendant said:

"The effect of such notice was to put the trust company upon inquiry to see whether it was about to accept money from one to whom it did not belong in payment of its own claim.   The presumption arising from the face of the

check was that it belonged to the Hartman Company, and that its president had no right to use it to pay his personal debt. The purpose of the law in exacting inquiry under such circumstances is to see whether the apparent situation is the actual situation, or, in other words, to learn whether facts exist to rebut the presumption. The object is not to discover negative facts, or such as would not arouse suspicion, but positive facts which would allay the suspicion already aroused. * * * If no inquiry is, in fact, made to dispel the presumption, but reasonable inquiry would have led to the discovery of facts which would have dispelled it, the purchaser of the paper is entitled to the benefit thereof. * * * This benefit, however, carries with it the burden of responsibility for such unfavorable facts as reasonable inquiry would have discovered in relation to the defect that made the inquiry necessary."

In reaching the above conclusion, the authorities cited by the respondent have not been overlooked. It is sufficient to say each of them is clearly distinguishable from the case here presented.

It follows that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.