WEN KROY REALTY CO., INC., Appellant, *v.* THE PUBLIC NATIONAL BANK AND TRUST COMPANY OF NEW YORK, Respondent.

First Department, January 29, 1932.

*Abraham Lillienthal*, for the appellant.

*Sam L. Cohen* of counsel [*Felix A. Fishman* with him on the brief; *Moses & Singer*, attorneys], for the respondent.

SHERMAN, J.  Plaintiff sold a mortgage and received from the purchaser three checks, one of which payable to its order in the sum of $15,000 is involved in this action.  That check was deposited with defendant to the credit of the account of the Silfo Amusement Company and the proceeds collected by defendant and credited to and used by that depositor.  It appears that the check bore the purported indorsement of plaintiff by Moses Silverman, as president, and his son, David Silverman, as secretary.  David Silverman never held that office.

Plaintiff's business seems to have been the making of loans in connection with real estate; and its affairs were to considerable extent dominated by Moses Silverman, its president.  He likewise controlled or owned the Silfo Amusement Company.  Plaintiff maintained a deposit account with the Amalgamated Bank and had this check been deposited in that account, as was customary, the proceeds could not have been withdrawn without the joint signature of plaintiff's president and treasurer.  Plaintiff's board of directors consisted of five individuals and its stockholders numbered about twenty-five.

Defendant rested upon plaintiff's proof showing that Moses Silverman had caused the check to be deposited with defendant in performance of his scheme to convert the moneys to his own purpose.

Defendant contended not only that Moses Silverman had power to transfer this check to the bank account of the Silfo Amusement Company, but also that his conduct in so doing had been ratified by plaintiff. The assignment of the mortgage was executed by both Moses Silverman, as president, and David Silverman, as secretary. It is argued that inasmuch as plaintiff ratified that transfer, it must be held to have sanctioned this conversion. But plaintiff had received and kept the purchase price paid to it for that mortgage and in fairness could do no less than ratify its transfer to the purchaser who had paid value for it.

Three separate questions were submitted by the learned trial court to the jury, each of which was answered in the negative. The first two were as follows: " Question No. 1. Do you find from the evidence that Moses Silverman, as president of the plaintiff corporation, had authority to endorse the check of David Abrams to the order of plaintiff for $15,000 (Plaintiff's Exhibit 1), without restriction or limitation? Answer: No.

" Question No. 2. Do you find from the evidence that the plaintiff, through its officers or its board of directors, directly or indirectly, in any manner or form, ratified the act of Moses Silverman, its president, in endorsing said check by himself as president of the plaintiff corporation, and in having his son, David Silverman, endorse the same as secretary? Answer: No."

The third question related solely to the duty, if any, of defendant to make inquiry as to the authority of plaintiff's president to indorse the check and the regularity of the indorsement which appeared on the check. In view of the fact that the jury found that the indorsement was unauthorized, no title passed, and, therefore, this question and the answer thereto became immaterial. The decisions are clear that under these circumstances, where plaintiff corporation has no contact with the defendant bank, and the bank has not been misled by plaintiff, it is liable for the check even though it has paid the proceeds thereof to its own depositor in good faith. (*Wagner Trading Co.* v. *Battery Park National Bank*, 228 N. Y. 37, 42; *Moch Co.* v. *Security Bank*, 176 App. Div. 842, 847; affd., 225 N. Y. 723; *Standard Steam S. Co.* v. *Corn Exchange Bank*, 220 id. 478, 481.)

The court upon defendant's motion directed a general verdict in favor of defendant stating that he did so " upon all the evidence in the case and also upon the special verdict of the jury." The

judgment as entered sets forth the special questions and the jury's answers thereto.

Inasmuch as the court adopted the jury's findings which were supported by ample evidence, the plaintiff — not the defendant — was entitled to judgment.

The judgment appealed from should be reversed, with costs, and judgment entered in favor of plaintiff and against defendant in the sum of $15,000, with interest from March 31, 1927, with costs.

FINCH, P. J., MERRELL, McAVOY and MARTIN, JJ., concur.

Judgment reversed, with costs, and judgment directed in favor of plaintiff and against defendant in the sum of $15,000, with interest from March 31, 1927, with costs.