THE DWELLE-KAISER COMPANY, Plaintiff, *v.* HARRISON ENGINEERING AND CONSTRUCTION CORPORATION and Others, Defendants.

Supreme Court, Erie County, June 6, 1932.

*William C. Carroll,* for the plaintiff.

*John O. Chapin,* for defendant Peter Elia.

*James P. Cotter,* for defendant allen Floor Covering Company.

*Palmer, Garono, Houck & Wickser,* for defendant Marine Trust Company of Buffalo.

*Lionel O. Grossman,* for defendant Thelen Iron Works.

*Merwin, Paul, Lesswing & Hickman,* for defendant Unland Bros., Inc.

*William R. Daniels,* for defendant Italian Mosaic and Marble Company.

*Burke & Desmond,* for defendant Viking Metal Products Corporation.

*Locke, Babcock, Hollister & Brown,* for defendant Anchor Fire Proofing Company.

*Hays, Hershfield, Kaufman & Schwabacher,* for defendant National Sash Weight Company.

*Shire & Jellinek* [*Joseph Swart* of counsel], for defendant R. S. McManus Steel Construction Company.

*Saperston, McNaughton & Saperston* [*O. G. Olds* of counsel], for defendant H. L. Ross Co., Inc.

*Phillips & Avery,* for defendant The Lockwood Company.

HINKLEY, J. This is an action to foreclose a lien for public improvement in the erection of the employees' home and infirmary of the State Homeopathic Hospital at Middletown, N. Y. There remains in the hands of the fiscal officer of the State of New York the sum of $100,000 earned by the defendant Harrison Engineering and Construction Corporation, the general contractor. The defendant The Marine Trust Company of Buffalo claims by virtue of a written assignment by the defendant Harrison Engineering and Construction Corporation, all moneys due and to become due to said Harrison Company under its contract of December 8, 1928, with the State. The assignment was dated March 8, 1930, and

was duly filed in accordance with law on the 11th day of March, 1930. At that time the Harrison Company owed the Marine Trust Company the sum of $58,167.68, part of which at least had been used in the performance of the Middletown contract. From the 11th day of February, 1929, until July, 1930, the indebtedness of the Harrison Company had been gradually reduced and the bank, during that time, had made no additional loans to the company. On July 22, 1930, the Harrison Company was then solvent and its retained percentages on the Middletown contract justified, in the opinion of the bank, an additional loan. The bank thereupon loaned to the Harrison Company the additional sum of $25,000. It is that loan which the lienors dispute. The amount of the lien of the plaintiff and its filing on January 26, 1931, was proved upon the trial. The amounts and filing of all the other liens were proved upon the trial.

The disputed question is whether the defendant The Marine Trust Company is entitled, under its assignment of March 8, 1930, to this sum of $25,000 loaned to the defendant Harrison Company on July 22, 1930, in addition to its previous advances of approximately $58,000. If not, that sum would accrue to the benefit of the lienors herein.

The evidence discloses that on the 22d day of July, 1930, the president of the defendant Harrison Company, one Harry B. Harrison, owed the defendant bank the sum of $61,503.24 upon his individual personal account. From the time of the historic stock market crash in October, 1929, the bank had been crowding Harrison for payments upon his personal loan or for additional security thereon. His collateral for his personal loan consisted partly of 1,800 shares of the defendant Harrison Company, and the bank was anxious that his personal loan should be reduced to somewhere near its so-called liquid collateral; that is, that the loan should not exceed the collateral which, unlike the stock of the defendant Harrison Company, was readily salable in the open market. Harrison was at that time not only president of the defendant Harrison Company, but also the owner and holder of ninety per cent of its stock. He also, at that time, exercised an executive and administrative control over both the financial affairs of the corporation and its building operations.

On July 22, 1930, the bank, then a creditor for approximately $58,000 of the defendant Harrison Company under its assignment of the Middletown Hospital contract, took the company's note for $25,000 and credited the company's account in the bank with that additional sum. On that or the next day Harrison signed the check of the Harrison Company to his own order for $25,000, which

was indorsed by him and deposited to his individual credit with the defendant bank. Harrison that day drew his check for $25,000 to the order of the defendant bank and the bank credited his individual personal loan with that sum and delivered to him the 1,800 shares of the stock of the defendant Harrison Company which had been pledged with the bank as collateral.

There is some dispute of fact between Harrison and one Max Rieger, assistant treasurer of the defendant bank, as to the transaction just outlined. Harrison claims that Rieger suggested that the personal loan of Harrison be reduced by money obtained by Harrison, as president of and upon the credit of the Harrison Company. Harrison's testimony, however, is neither positive nor convincing upon that point. Rieger claims that the two steps were not related in his mind; that his interest at the time was centered on improving the security held by the bank on Harrison's personal loan. Rieger handled both transactions; one in receiving the note of the Harrison Company for $25,000 on July 22, 1930, and crediting the company's account with that sum; the other transaction in crediting and reducing Harrison's personal loan in the sum of $25,000 on July 23, 1930, and returning to Harrison some of the collateral pledged by him upon his personal loan. Rieger claims, however, that the check of the corporation drawn to the order of Harrison passed through the hands of some bookkeeper of the bank without Rieger's knowledge. The court gives credence to the testimony of Rieger and believes that the transaction took place as he claims. In other words, it is natural that Rieger should be vitally interested in protecting the bank in view of the depletion of Harrison's personal security. How that could be accomplished was in reality Harrison's problem, and Rieger, firm in his belief that the retained percentages of the company were ample security for an additional loan by the bank to the company, may not have given that matter a second thought. While his recollection of to-day of this one of thousands of similar transactions does not unite the two transactions, it must be assumed that having had personal charge of the loan to the company and also the reduction of Harrison's personal loan, he knew at that time they were one and the same transaction. However, this decision does not turn upon the actual knowledge of Rieger that Harrison was illegally using the company's funds, for, whether he knew or not, the act of Harrison was a conversion, and the bank, under the authorities, was put upon inquiry when the large check of $25,000 of the company was deposited to the credit of Harrison and the money employed to reduce his personal loan. This is not a case of charging the bank for having honored checks drawn on Harrison's personal account

out of moneys of the corporation. Nor is this an action by the corporation. The lienors were creditors of the corporation at the time and the bank itself profited by the transaction.

The case of *Wagner Trading Co.* v. *Battery National Bank* (228 N. Y. 37) is decisive of this action. The opinion of the court in that case reiterates a principle of law laid down in *Standard S. S. Co.* v. *Corn Exchange Bank* (220 N. Y. 478), which has never been, in any respect, altered or modified. " Any person taking checks made payable to a corporation, which can act only by agents, does so at his peril and must abide by the consequences if the agent who indorses the same is without authority, unless the corporation is negligent * * * or is otherwise precluded by its conduct from setting up such lack of authority in the agent."

The facts in the case of *Wagner Trading Co.* v. *Battery National Bank* (*supra*) extend the doctrine farther than this decision. In that case Wagner, the president of the plaintiff corporation, indorsed fifteen checks payable to the corporation and deposited them to his personal account with the defendant bank. The bank collected the proceeds and paid them out in the usual course of banking on the personal checks of Wagner. The court said (at p. 41): " The facts showing the conversion are complete. Wagner had authority to indorse the checks, although no by-law or resolution is in evidence to that effect, but only for the purposes of the corporation's business and not to transfer the checks to himself personally or for his personal use. The defendant endeavored to prove estoppel and negligence of the plaintiff. The trial court rightly excluded all such evidence. The plaintiff had no relations with and owed no special duty to the defendant. It was not a depositor of the defendant. When the defendant accepted the deposit of Wagner and became his banking agent, the defendant was in complete control of its relations with Wagner. It could, to safely protect itself in its dealings with Wagner, inquire as to his relations with the plaintiff, the authority he possessed, and could insist upon an examination of the plaintiff's by-laws and minutes if it thought that necessary to protect itself. When it accepted the checks payable to the plaintiff and indorsed by Wagner as president of the plaintiff for deposit to the account of Wagner himself, it did so at its peril to ascertain whether Wagner had authority to indorse them and by his indorsement transfer the money to be paid thereon to his personal account. (*Cheever* v. *Pittsburgh, S. & L. E. R. R. Co.*, 150 N. Y. 59; *Ward* v. *City Trust Co. of N. Y.*, 192 N. Y. 61, 71.) If Wagner had no such authority, title to the money in question never passed to the defendant and if it received it, it did so without authority and must account and make payment to the owner.

(*Schmidt* v. *Garfield National Bank*, 64 Hun, 298; affirmed, 138 N. Y. 631; *Sims* v. *U. S. Trust Co. of N. Y.*, 103 N. Y. 472; *Fidelity & Deposit Co. of Maryland* v. *Queens County Trust Company*, 226 N. Y. 225, 233.)

" The transaction and decision are not affected by the fact that relying upon the funds it supposed were deposited by Wagner, the defendant paid out funds upon Wagner's personal check drawn upon it. To do so would be to charge the plaintiff because of transactions with which it had no connection.

" The rule governing this case is well stated in *Standard S. S. Co.* v. *Corn Exchange Bank* (220 N. Y. 478, 481), where POUND, J., says: ' Any person taking checks made payable to a corporation, which can act only by agents, does so at his peril and must abide by the consequences if the agent who indorses the same is without authority, unless the corporation is negligent or is otherwise precluded by its conduct from setting up such lack of authority in the agent.

" ' If the original indorsement was authorized, the diversion of the funds after indorsement would not make it a forgery; but, if the original indorsement was unauthorized, parties dealing with the wrongdoer and innocent parties alike were bound to know the lack of the agent's authority to convey title away from the true owner to any one.'

" Assuming as we do that Wagner had general authority to indorse checks for the plaintiff's corporate purposes, clearly this does not authorize him to indorse checks to his own order and appropriate the money to his own personal use, and the nature of this transaction was such as to warn defendant that the checks were being diverted from usual business channels."

The fact must be borne in mind that this action is not brought by the Harrison Company but the claim is made for the benefit of lienors who at the time of the conversion were creditors of the Harrison Company.

The Harrison Company on June 26, 1926, adopted a resolution, a certified copy of which was delivered to the defendant bank, which contained the following: " And be it further resolved, That the President, Harry B. Harrison, shall be and hereby is authorized to sign checks and orders for the payment of money withdrawing funds so deposited, and that the said Trust Company shall be and hereby is authorized and directed to honor and pay any checks and orders so drawn, when so signed, whether such checks be payable to the order of the officer signing them, and whether they are deposited to the individual credit of the officer signing them, or to the individual credit of any of the other officers or not."

That resolution might, in an action brought by the Harrison Company, relieve the bank from conversion in honoring checks of Harrison to reimburse other individual creditors in the ordinary course of banking business. But neither the authority of that resolution nor the negligence of the corporation could affect these lienors who, as creditors of the Harrison Company or otherwise, had no personal relations with the bank. Surely the right of these lienors to a fund created by the Middletown contract is superior to that of the bank through its assignment of the funds when the bank knew and was charged with the knowledge that Harrison was converting the money of the corporation to his individual use. Particularly is this true where the entire transaction was confined to Harrison and the bank. Not one dollar of cash was employed during the thirty-six-hour period which commenced when the bank received the company's note, continued on and consisted entirely of entries upon the books of the bank and ended with the delivery to Harrison personally of part of his personal collateral, all to the equal profit of Harrison and the bank without the knowledge of the creditors herein.

Other cases similar to this and authority for this decision are *Cheever* v. *Pittsburgh, etc.* (150 N. Y. 59, at p. 67); *Ward* v. *City Trust Co. of N. Y.* (192 id. 61); *Rochester, etc., Co.* v. *Paviour* (164 id. 281); *Lanning* v. *Trust Co. of America* (137 App. Div. 722); *Bank of New York* v. *A. D. & T. Co.* (143 N. Y. 559); *Weissman* v. *Banque De Bruxelles* (254 id. 489); *Wen Kroy Realty Co.* v. *Pub. Nat. B. & T. Co.* (234 App. Div. 461).

Judgment may be entered in accordance with this opinion.