ARTHUR B. JENNINGS, RECEIVER OF BROADNEY CORPORATION, PLAINTIFF-RESPONDENT, v. STUDEBAKER SALES CORPORATION OF AMERICA, A CORPORATION, DEFENDANT-APPELLANT.

Argued October 25, 1933—Decided February 2, 1934.

For the appellant, *McCarter & English.*

For the respondent, *Arthur T. Vanderbilt* (*Nathan L. Jacobs,* on the brief).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. This appeal concerns two cases that had the consideration of the trial court at the Essex County Circuit of the Supreme Court. In each case, the plaintiff, Arthur B. Jennings, as receiver of the Broadney Corporation (formerly Ira C. Jones Company), brought suit against the Studebaker Sales Corporation of America, in the first, to recover money said to have been unlawfully paid to the defendant corporation and in the second to recover money alleged to be due from the defendant to the said Broadney Corporation.

The cases will be considered in the order of their presentation.

*First case.*

Between June 22d, 1929, and December 28th, 1931, the Ira C. Jones Company (now the Broadney Corporation, in the hands of a receiver) paid out by check, at different times, to the defendant the sum of $27,000 which the plaintiff charges the defendant received for the use and benefit of the Jones company in effect alleging the defendant was a constructive

trustee. The complaint alleges that Mr. Jones, who controlled the Ira C. Jones Company, caused these moneys to be paid to the defendant out of the corporate funds, on account of his personal indebtedness to the defendant, Studebaker Sales Corporation of America, and that the defendant received this money, converting it to its own use, well knowing that it was the money of the Jones company, and not the money of Jones, individually.

Defendant admits receipt of $27,000 and seeks to justify the payments on the ground that this sum in turn was charged against Mr. Jones on the books of the Jones company; that it represented interest on the sum of $150,000 which the defendant had loaned to Mr. Jones on his note, claiming that the money was used in the business of the Jones company.

The defendant also filed a counter-claim saying that on January 2d, 1931, Mr. Jones delivered to it, his promissory note in the sum of $150,000; that on that date Mr. Jones and the Jones company, as first party, entered into an agreement with the defendant, as second party, reciting that the sum of $150,000 was loaned to Jones by the defendant, for the purpose of being used in the business of the Jones company, and that said loan would be paid not later than October 31st, 1931; that payment had not been made and that there was a balance due of $129,030.15 which the defendant claimed as damages on the counter-claim. Parenthetically, it should be observed that the loan was actually made to Jones on January 2d, 1929, and that the note of January 2d, 1931, was a renewal. ·

Motion was made to strike out the answer and counter-claim as sham and they were stricken and judgment entered in favor of the plaintiff and against the defendant for the amounts so paid which, with interest, totaled $31,428. The defendant appealed from this final judgment on the ground that the court erred in striking out the answer and counter-claim and in entering judgment for the plaintiff.

The appellant's position in this court is predicated on three points. First, that the affidavits submitted in support of the answer raised fact issues which should have gone to the jury.

Second, that all of the stockholders of the Jones company consented to the payments and that the company, at the time, was solvent and no rights of creditors were involved, and, third, that the counter-claim was valid.

No useful purpose will be served by reciting in detail the sufficiency of the affidavits in support of the motion to strike out the answer and counter-claim and the insufficiency of the affidavits filed in their support. The affidavits, upholding the motion, make out a complete and exclusive portrayal of the corporation funds of the Jones company being applied by Mr. Jones to discharge a personal obligation. Beginning with June 19th, 1929, we find reminders, by letter, of the credit manager of the defendant corporation addressed to Mr. Jones personally, that the interest on *his* obligation of $150,000 was due and requesting payment. The affidavits lead to the inescapable conclusion that Mr. Jones borrowed this money from the defendant at the beginning of the year 1929, to buy out the interests of several stockholders of the Jones company and that at that time Mr. Jones delivered his personal note for the loan, concerning all of which the defendant had complete knowledge; that the defendant knew that the moneys paid to it on account of interest charges were funds of the Jones company, since the checks were those of the corporation; that there were no moneys due to Mr. Jones personally from the Jones company by way of salary, dividends or otherwise but that on the contrary, Mr. Jones was indebted to the Jones company for a large sum of money; further, that the sum borrowed by Mr. Jones personally from the Studebaker Sales Corporation of America, was not at any time applied to the benefit of the Jones company; that no action was taken by the board of directors of the Jones company authorizing the execution of the agreement, dated January 2d, 1931, wherein and whereby it is argued the Jones company became answerable for the loan of $150,000 for which, according to the proof, it never received an atom of consideration. Therefore, there was no fact issue raised and the sufficiency of the pleading in answer was for the court and not for the jury to consider and it was properly stricken out.

*Eisele & King* v. *Raphael,* 90 *N. J. L.* 219; *Wittemann* v. *Giele,* 99 *Id.* 478; *Meserole Security Co.* v. *Dintenfass,* 108 *Id.* 298.

The second point made by the appellant is that the stockholders of the Jones company consented to the payment; that the corporation was solvent at the time and that the rights of creditors or of the public were not involved. From the proofs before us, it cannot be said that all the stockholders of the Jones company consented to these payments. The allegation is that the stock of the corporation was the property of Mr. Jones, individually, with the exception of the qualifying shares held by others who were directors. How many directors there were, does not appear, nor how much stock was owned by them. There is no proof that Mr. Jones, in the transactions complained of had the sanction of the corporation by preliminary authority or subsequent ratification. Indeed the very opposite is true because the record discloses the sworn statement that the use of the corporate funds was not authorized by the board of directors of the Jones company, and, further, that the agreement signed by Mr. Jones, as president of the Jones company, purporting to obligate the Jones company to pay the principal of the debt in question was likewise without sanction. The money owed by Mr. Jones to the defendant was of no concern whatever to the Jones company, and outside of the authority conferred by law or by the by-laws, upon Jones, as president, he had no power to bind the corporation any more than any other director.

The relation a director bears to a corporation is essentially fiduciary and it does not require a code of regulation to inform such fiduciary officer what he may or may not do. Common honesty is the unfailing index to what is permissible and what is forbidden.

There is no affidavit from Mr. Jones, who was the principal actor in these transactions, and who doubtless could have thrown much light upon the question under investigation. The absence of such proof from him is, of course, not

helpful to the defendant and the inescapable inference is, unless he be dead, that his affidavit, if procured, would militate against his conduct in this situation, since here we have a plain picture of a conflict between self-interest and the interest of the corporation.

The appellant relies on the case of *Breslin* v. *Fries-Breslin Co., 70 N. J. L.* 274. There the question turned upon the doctrine of estoppel where the act subsequently complained of had had the unanimous consent and acquiescence of the stockholders. In that case, by the voluntary and unanimous act of the stockholders, they were all bound and by the same token the corporation likewise became bound. In other words, a stockholder who, with his fellow stockholders, in unanimity, brought about corporate action which was formally irregular, will not be heard having accepted the benefits of such action, in repudiation of it. *Branch* v. *Jesup, 106 U. S.* 468; *Thompson on Corporations* (3d ed.), § 3605. The case of *New Jersey Car Spring and Rubber Co.* v. *Fields, 85 N. J. L.* 217, is likewise urged in support of the appellant's position. There, too, the court determined that while the action under attack was irregular it was not *ultra vires,* the contract in question having been assented to by all the stockholders, the payments under attack having been continued for more than six years and the contract never having been challenged until after the death of the beneficiary. In that case, all the stockholders without exception made the contract. In the Fries case all the stockholders acquiesced in the contract. Neither of these authorities is helpful to the appellant. This appellant knew that the obligation was that of Jones personally and that the amounts received were paid not by the debtor, but by a corporation which was a stranger to the transaction. As a matter of law, the defendant, in receiving from Mr. Jones, the president of the Jones company, the funds of the company in payment of the personal debt of its president, receives it at his peril. *Prima facie* the act is unlawful unless authorized or ratified by the corporation. *DeJonge & Co.* v. *Woodport Hotel and Land Co., 77 N. J. L.* 233; *Campbell*

v. *Manufacturers National Bank,* 67 *Id.* 301; *Aerial League of America* v. *Aircraft, &c., Corp.,* 97 *Id.* 530, 532.

It is further urged that at the time these payments were made the corporation was solvent. Assuming that the company was solvent, no authority can be cited in support of the proposition that its president may misappropriate its funds, diverting them for the payment of personal obligations without authority, precedent or subsequent. Estoppel cannot be invoked against the receiver of a corporation, presently insolvent, who represents both creditors, stockholders and all parties in interest in a transaction, unconscionable in essence and known to be such by the party sought to be charged, even though the transaction was consummated while the corporation was solvent, in the absence of the consent of all parties concerned. The appellant was not an innocent holder. On the stated days it received in payment of Jones' personal obligation checks of the corporation. The receipt of these drafts on corporate funds was an eloquent warning that reasonable people could not misunderstand. The philosophy of all our cases on this and kindred subjects is in perfect accord. *Demarest* v. *Spiral Riveted Tube Co.,* 71 *N. J. L.* 14; *Stokes* v. *New Jersey Pottery Co.,* 46 *Id.* 237; *Clement et al.* v. *Young-McShea Amusement Co.,* 70 *N. J. Eq.* 677; *Dennis Metal Manufacturing Co.* v. *Fidelity Union Tr. Co.,* 99 *N. J. L.* 365; *Robbins et al.* v. *Passaic National Bank and Trust Co.,* 109 *Id.* 250; *Sims* v. *United States Tr. Co.,* 103 *N. Y.* 472; *Havana C. R. Co.* v. *Central Tr. Co.,* 123 *C. C. A.* 72; 204 *Fed. Rep.* 546; *L. R. A.* 1915, B-715; *McDowell* v. *Bauman,* 189 *Ky.* 136; 224 *S. W. Rep.* 671; *Newburyport* v. *Fidelity Insurance Co.,* 197 *Mass.* 596; 84 *N. E. Rep.* 111; *Newburyport* v. *Spear,* 204 *Mass.* 146; 90 *N. E. Rep.* 522; *Reynolds* v. *Title Guaranty Trust Co.,* 196 *Mo. App.* 21; 189 *S. W. Rep.* 33; *Bressman, Inc.,* v. *Mosson,* 127 *Misc. Rep.* (*N. Y.*) 282; 215 *N. Y. Supp.* 766; *Coleman* v. *Slocke,* 159 *Mo. App.* 43; 139 *S. W. Rep.* 216; *Newman* v. *Newman,* 160 *App. Div.* (*N. Y.*) 331; 145 *N. Y. Supp.* 325; *Ajax Tool Co.* v. *National Tool Co.,* 120 *Misc.*

*Rep.* (*N. Y.*) 603; 199 *N. Y. Supp.* 163. See *Uniform Laws Annotated,* 5 *Negotiable Instruments Law,* § 56, *subdivison* V: "Generally, one who takes a corporate note or check for the individual debt or benefit of the officer signing or endorsing for the corporation is thereby put on inquiry as to whether corporate assets are not being wrongfully diverted." See, also, to same general effect, *Brannon's Negotiable Instrument Law,* 605, 615.

We find the argument in support of the proposal that the counter-claim was valid to be entirely without substance. In this matter, it is sufficient only to observe that the obligation on the note never belonged to the Jones company; that the execution of the agreement purporting to fasten liability for it upon the Jones company was an act neither authorized nor ratified and that no consideration therefor moved to the corporation.

The action of the trial court in striking out the answer and counter-claim will be affirmed with costs.

*Second case.*

The complaint charges that the defendant is indebted to the plaintiff in various sums, to wit: for the first quarter ending March 31st, 1932, $9,128.11, and for the second quarter of the same year, $3,047.91, under an agreement between the parties whereby plaintiff became entitled to "distributor's rebate earned under franchise." Other claims were made for which summary judgment was denied, which do not now concern us.

The defendant, in its answer, admitted these items, above mentioned, to be due but said that they had been assigned to the Eastern Acceptance Corporation and therefore judgment should not have been awarded this plaintiff and also pleaded the counter-claim, set up in the prior case.

The court struck out the answer as to these items and also the counter-claim and recommended summary judgment, which has been entered, and from which judgment the appeal in this case was taken.

Seven grounds of appeal are presented in the record, none

of which are particularly argued, and it is questionable whether the grounds stated are inclusive of the points argued. The requirements in this particular are tersely set out in *Booth* v. *Keegan,* 108 *N. J. L.* 538, but, passing that, the grounds argued are (a) that it was error to strike out the answer and award judgment to this plaintiff because the two accounts, admittedly due, had been assigned to the Eastern Acceptance Corporation, which is not a party plaintiff, and (b) that it was error to strike the counter-claim.

It is argued therefore that the court erred in awarding judgment to the plaintiff because the claim had been assigned to another and the complaint does not state that this suit is for the benefit of the assignee; and, further, that even if the action may be maintained by the assignor the rule permitting such assignor to sue does not apply in the present case where the plaintiff is suing as receiver, *i. e.,* in a representative capacity. In support of this position it is urged that the receiver is primarily concerned with the interests of the creditors of the insolvent corporation and that the estate funds should not be used to bring this suit. The defendant will not be heard to complain in this respect for the reason that this particular does not concern the defendant at all. Furthermore, it is well settled that a receiver represents not only the creditors but also the stockholders and all parties in interest of an insolvent corporation. *Pom. Eq. Rem.,* § 1641.

The appellant further overlooks the fact that the Jones company at the time of the assignment, May 24th, 1932, warranted that these accounts would be paid and stands in a position of liability in regard thereto. It should further be noted that in the affidavit, filed in support of the motion assailing the answer, the plaintiff says that he had been authorized by the Eastern Acceptance Corporation, prior to suit, to bring this action.

Originally at common law *choses* in action were inalienable. This rule, save for a few exceptions, was of the widest application. The reason was that a *chose* in action presupposes a personal relation between the parties which, in the

nature of things, is not assignable. 2 *Spenc. Eq. Jur.* 850. See, also, *Poll. Cont.* (*5th ed.*) 206; *Ames, Legal History, Lecture XVIII*. Later the necessities of business brought about an unrestricted transfer of debts and credits through the medium of power of attorney.

Prior to permission being given by statute, which has been in the practice for a long time and was carried into the Practice act of 1903 (3 *Comp. Stat., p.* 4056, § 19), an assignee, as such, could not sue in his own name but was required to sue in the name of the assignor and the assignor was likewise obliged to permit the use of his name for the purpose of suit. *Elsberg* v. *Honeck,* 76 *N. J. L.* 181. Our statute (*supra*), that an assignee may sue in his own name is permissive only, showing the departure in this particular from the rule at common law. The following language in *Elsberg* v. *Honeck, supra,* is pertinent:

"The next question to be considered is whether the statute requires the assignee to sue in his own name. It has been determined in this court that the statute does not require that the assignee shall sue in his own name but only permits this to be done. *Sullivan* v. *Visconti,* 68 *Id.* 543, 551; *affirmed,* 69 *Id.* 452."

Furthermore, it was determined in that case that a statement by the plaintiff (assignor), particularizing for whose use and benefit the action was brought, was commendable but not necessary. See, also, *Belton* v. *Gibbon,* 12 *N. J. L.* 76. In the Elsberg case the chose in action was assigned by a trustee in bankruptcy after suit was commenced. In the instant case the chose in action was assigned by the corporation before the suit was brought by the receiver. Under either circumstance, a defendant has no right to complain since his position is not, nor can it be, injuriously affected by the mechanics of assignment.

The assignor bringing suit, as here, becomes trustee for the assignee who may control the suit and receive the proceeds thereof. "Where a case required and in every case where the assignee desired it, this trust was declared on the

face of the proceedings, by appending to the name of the nominal plaintiff, the words, 'who sues to the use of' the assignee; a use being nothing but an inactive trust." *Sullivan* v. *Visconti, supra* (at *pp.* 548, 549).

It is unnecessary to discuss the second ground urged in this suit relative to the counter-claim since it has been disposed of in our determination of the first case.

The judgment under review will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, HEHER, PERSKIE, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ.    14.

*For reversal*—None.