**O'KEEFE v. HILL et al.**

**SAME v. MUTUAL LOAN ASS'N OF AT-
LANTIC CITY et al.**

Nos. 6810, 6811.

Circuit Court of Appeals, Third Circuit.
June 28, 1939.

Bourgeois & Coulomb and George A. Bourgeois, all of Atlantic City, N. J., for appellant.

Louis B. LeDuc, of Camden, N. J., for appellees.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

BIGGS, Circuit Judge.

The appeals at bar grow out of substantially the same circumstances and will be disposed of in one opinion.

The appellant in both cases is the receiver of Atlantic City National Bank. He has brought two suits. The first (No. 6810) was filed against Elisha C. Chew, Charles H. Parsons, Edgar S. Hill, Albert Beyer and Charles Park, directors of Mutual Loan Association of Atlantic City, a New Jersey corporation. Beyer died after the commencement of the action and his executor was substituted as a defendant in his stead. The second suit (No. 6811) was brought against Mutual Loan Association and its receiver, Walter E. Beyer.

Each complaint contains three counts. That in No. 6811 states causes of action upon three notes hereafter referred to. The trial court permitted the case to go to the jury upon all three counts. The jury rendered a verdict against the appellant on the first count and in his favor on counts two and three. The first count was declared upon a note in the sum of $50,500 which is discussed at length at a later point in this opinion. The second and third counts of the complaint were declared upon two other notes in the sums of $10,000 and $14,000 respectively given by the Loan Association to the Atlantic City National Bank under such circumstances as will appear.

The first count of the complaint in No. 6810 is based upon a guaranty, dated December 9, 1929, given by the directors of the Loan Association to the Atlantic City National Bank, it being alleged that the directors of the Loan Association guaranteed the payment of the $50,500 note. The second and third counts are also declared upon this guaranty in so far as it relates to the notes in the respective amounts of $10,000 and $14,000. The jury rendered a verdict of actio non upon all three counts in favor of all the appellees and judgment was entered in accordance with this verdict.

The appellant has appealed from the judgments rendered against him.

The facts are as follows: Mutual Loan Association of Atlantic City is a pawnbroker corporation. It has authorized capital stock of $50,000 which has been divided into 5,000 shares of a par value of $10 each. The treasurer of the Loan Association and its dominating factor in the year 1928 and thereafter was one Tilton. Its board of directors consisted of persons who were dominated by Tilton.

Prior to November, 1927, the Loan Association banked with Atlantic Safe Deposit & Trust Company which had made loans to the Association totalling $27,000. Tilton, who was a director of the Atlantic City National Bank, induced the Bank to take over these loans. Two notes totalling $27,000 were thereupon given by the Association to the Bank and the Association's account was transferred to it. These notes were first reduced to sums of $10,000 and $14,000 respectively and thereafter were subjected to further reductions as indicated by the pleadings. These two notes as reduced are declared upon in the second and third counts of the complaint in No. 6811, and, with the guaranty previously referred to, form the basis of the second and third counts of the complaint against the appellees as directors of the Loan Association in No. 6810.

Upon opening the account for the Loan Association with the Atlantic City National Bank, Park, who was secretary as well as a director of the Association, presented to the Bank a "resolution" of the Association dated November 8, 1927, which pretended to authorize the officers of the Association in the Association's name "* * * to borrow sufficient money from time to time for the operation of the Company, on their promissory note to the Atlantic City National Bank." In fact no such resolution was ever passed by the board of directors of the Association. Park thus prepared the way for Tilton's subsequent fraud.

In April, 1928, Tilton was in need of funds, was himself indebted to the Bank and could procure no further loans from it upon his personal credit. He thereupon made application to the Bank for the loan of $50,500 for the Loan Association. Tilton testified that he put the proposition of pledging of the Association's credit for his own advantage before the directors of the Association at one of the regular meetings of the board and that they agreed he might make the Association's credit his own. Park corroborated Tilton's testimony in this respect, as did Chew. Hill and Beyer denied the truth of these statements and produced the minute book of the Association which showed neither resolution nor discussion upon such a subject until March 10, 1933. Upon that day a resolution ratifying Tilton's transaction was passed.

The record does not disclose to what officer of the Bank Tilton made his application for the $50,500 loan. Certain officers of the bank denied that he made application to them. The minutes of the meetings of the Bank's directors show confirmation of the loan the day after the loan was made. Be this as it may, however, upon April 26, 1928, a demand note payable to the order of the Association in the sum of $50,500, signed by Parsons, as president of the Association, and by Park, as its secretary, was delivered to the Bank. Upon the reverse side of this note was a printed guaranty[1] which it appears was signed by Tilton as an individual and as treasurer of the Association. Upon the same day, the loan being made, a check signed by Parsons as president and Tilton as treasurer of the Association and payable to Tilton's order was deposited by Tilton to his account at the Bank and was honored by it. Thereafter, Tilton withdrew from his account, so augmented, a sum in excess of $50,500, and thus secured for himself the full benefit of the loan which the Bank made upon the credit of the Association.

As we have stated heretofore this note serves as the basis of the first count of the complaint in No. 6811 and in conjunction with the guaranty of December 9, 1929, hereafter referred to more specifically, as the ground for the first count of the complaint in No. 6810.

Certain other facts should be set forth. Hill and Beyer testified that Tilton kept them in ignorance of these transactions. It does appear that the sum of the $50,500 note was not entered upon the books of the Association until some nine months later and that Tilton did not include any statement in respect to the loan upon his regular monthly reports as treasurer of the Association. Interest payments upon the loan were made to the Bank with Tilton's personal checks, except in one instance, when interest was paid by check of the Association. This check was covered with Tilton's funds, however. Tilton testified that he considered the note to be his obligation.

As security for the $50,500 note, the record shows that the Bank took from Tilton as collateral certain stocks listed upon the face of the note. These stocks were Tilton's property. Upon November 20, 1928, the Bank, at Tilton's request, released to him the stock of Jersey Coast Fire Insurance Company theretofore pledged with the note as part of the collateral, together with a liquidating dividend on the shares in the sum of $24,000. At this time other collateral was substituted for the

[1] The guaranty was as follows: "In consideration of one dollar paid to the undersigned, and of the making at the request of the undersigned, of the loan evidenced by the within note, the undersigned hereby jointly and severally guarantee to the Atlantic City National Bank, its successors, endorsees or assigns, the punctual payment, at maturity of the said loan, and hereby assent to all the terms and conditions of the said note and consent that the securities for the said loan may be exchanged or surrendered from time to time, or the time of payment of the said loan extended, without notice to or further assent from the undersigned, who will remain bound upon this guarantee notwithstanding such changes, surrender or extension, hereby waiving demand, protest and notice thereof."

stock released. The substituted collateral with all collateral was released subsequently to Tilton. The result was therefore that the note of the Association remained at the Bank without collateral.

Following the collapse of the stock market in October, 1929, the Bank demanded of Tilton that he procure a guaranty from the directors of the Loan Association for all loans purported to have been made by the Bank to the Loan Association. A guaranty unlimited in amount, signed by most of the directors of the Loan Association was then procured by Tilton. Apparently Tilton persuaded these directors that this guaranty was merely a duplicate guaranty, a "live" paper, to be executed upon the request of the Bank to replace or revivify the guaranty of December 9, 1927, which was limited in its amount to $25,000. Beyer and Hill testified they signed the guaranty of December 9, 1929, without reading it. The guaranty of December 9, 1927, is not sued upon.

Beyer testified also that in June, 1932, he became aware of the existence of the $50,500 note and of the extent of the Association's indebtedness to the Bank. He stated that he then informed Hill of these facts. Hill and Beyer together made demands upon Tilton and as a result of these demands Tilton delivered to them 100 shares of the stock of the Bank. Hill and Beyer deposited this stock in a safe deposit box in the name of the Association. In January, 1933, the Bank closed its doors and the appellant was appointed receiver for it. The 100 shares of its stock which Beyer and Hill had received from Tilton became worthless. Beyer and Hill thereupon obtained from Tilton certain other securities of slight value for the benefit of the Association. Upon advice of counsel, these were returned to Tilton by Beyer and Hill some months thereafter.

### The Law.

As to the $50,500 note, the first count of the complaints in each suit recites that this note was endorsed by Tilton and the Loan Association and was negotiated with the Bank. It is obvious therefore that recovery on the note turns in the first instance upon the question of the validity of its negotiation. Without negotiation a note payable to its maker is a nullity. Negotiation in turn depends upon endorsement. Though the note was signed by Tilton individually and purported to be signed by the Loan Association by Tilton as treasurer, these signatures were placed under the written form of guaranty set out in Note 1 to this opinion. Are such signatures the equivalent of endorsements under N.J.R.S. Title 7, N.J.S.A. 7:1—1 et seq., the Negotiable Instruments Law (P.L. 1902, p. 583)? Section 16 of Title 7[2] serves to raise a presumption of valid delivery of the note under the circumstances of the case at bar. Section 17(VI) provides that "Where a signature is so placed upon the instrument that it is not clear in what capacity the person making the same intended to sign, he is to be deemed an indorser." Section 63 of Title 7 provides that "A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." In the case at bar, the intention of the signers to sign a guarantee is indicated by express language. Section 30 provides, "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof; if payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder completed by delivery." The note sub judice was payable to order. Section 31 of Title 7 throws little light upon the question presented. This section provides that "The indorsement must be written on the instrument itself or upon a paper attached thereto; the signature of the indorser, without additional words, is a sufficient indorsement." The phrase "without additional words", in our opinion, serves two ends and implies not only that a signature by itself will constitute an endorsement, but also makes plain in the light of Section 63 heretofore quoted that if additional words be used, they may not be such as would

[2] "Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto; as between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; * * * and where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved."

destroy the nature of an endorsement as in the case at bar.

The effect of a transfer of a note, viz., a transfer at common law and not under the law merchant is made plain by the language of Section 49 of Title 7, which reads as follows: "Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferor had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferor; but for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made." In view of this section, it would appear that when the Bank took possession of the note, it obtained a right to compel endorsement, but it did not possess the status of a holder in due course until the endorsement was made.

Even without regard for the specific provisions of the New Jersey Negotiable Instruments Law, which we have quoted and discussed, though the authorities are divided, none the less, the weight of authority supports clearly the view that a guaranty will not serve as an endorsement. Central Trust Co. v. First National Bank, 101 U.S. 68, 25 L.Ed. 876; Omaha National Bank v. Walker, C.C., 5 F. 399; Tuttle v. Bartholmew, 12 Metc. 452, 53 Mass. 452; Taylor v. Binney, 7 Mass. 479; Edgerly v. Lawson, 176 Mass. 551, 57 N.E. 1020, 51 L.R.A. 432; Conn v. Atkinson, 227 Ky. 594, 13 S.W.2d 759; Stephens v. Bowles, 202 Mo.App. 599, 206 S.W. 589; Dillard v. Farmers' Mercantile Co., 190 N. C. 225, 129 S.E. 598; Canfield v. Vaughan, 8 Mart., O.S., La., 682; Northern State Bank v. Bellamy, 19 N.D. 509, 125 N.W. 888, 31 L.R.A.,N.S., 149; and Snevily v. Ekel, 1 Watts & S. 203–205. No pertinent decision of the courts of New Jersey has been cited to us upon this point, however, and we have found none.

We conclude that the $50,500 note was not endorsed, was therefore not negotiated and that the National Bank took it subject to all of its infirmities.

### As to the Infirmities of the Note.

The appellees point out various infirmities in the note and contend that it is invalid for at least two reasons. First, they say that since neither the president, secretary nor treasurer of the Association was empowered ex virtute officii to bind the Association by their respective signatures, it was therefore unauthorized. They cite in support of this proposition Dennis Metal Mfg. Co. v. Fidelity Union Trust Co., 99 N.J.L. 365, 368, 123 A. 614; Murphy v. W. H. & F. W. Cane, 80 N.J.L. 163, 76 A. 323; and other decisions of like tenor of the courts of New Jersey. Second, the appellees contend that because the execution and delivery of the note constituted a pledging of corporate credit for the benefit of an individual it was ultra vires and not subject to any subsequent ratification by the board of directors of the Association at a later date. They cite in support of their contention Owen & Co. v. Storms & Co., 78 N.J.L. 154, 72 A. 441; Heidler v. Werner & Co., 97 N.J.Eq. 505, 128 A. 237; and other cases of a similar tenor.

In our opinion, however, in view of the fact that the Bank placed the amount of the note to the credit of the payee, the Association, the appellees are foreclosed from asserting these and other infirmities. Camden & Atlantic R. Co. v. May's Landing & Harbor City R. Co., 48 N.J.L. 530, 7 A. 523; Reed v. Helois Carbide Specialty Co., 64 N.J.Eq. 231, 53 A. 1057. We need not discuss these cases in detail.

Upon the other hand, upon the uncontradicted evidence there is no doubt but that the Association is entitled to a set-off in the full amount of the note. The Bank honored a check in the amount of the note payable to the order of Tilton, deposited by him in his account at the Bank. By these acts the Bank made available to Tilton a sum actually greater than the total authorized capital of the Association. While it is not shown that the paying teller of the Bank who honored the check possessed any knowledge of the transactions between the Association, Tilton and the Bank and the granting of the loan and the payment of the check were separate transactions, none the less the principle of composite knowledge united the two. The Bank granted the loan and paid the check permitting the diversion of funds granted to the Association under such circumstances as were tantamount to knowledge. Dwelle-Kaiser Co. v. Harrison Engineering & Construction Corporation, 143 Misc. 899, 258 N.Y.S. 704.

Even without such knowledge, in the language quoted in Capital City Brick Co. v. Jackson, 2 Ga.App. 771, 59 S.E. 92, the

check "bears its death wound on its face." This check in an amount greater than the outstanding capital stock of the Association, it appearing that the Bank possessed a financial statement of the Association showing its capitalization, was sufficient to put the Bank upon inquiry and such inquiry inevitably would have disclosed the fact that Tilton was in process of diverting the Association's funds to his own use. See Jennings v. Studebaker Sales Corporation of America, 112 N.J.L. 399, 170 A. 626; Rochester & Charlotte Turnpike Rd. Co. v. Paviour, 164 N.Y. 281, 58 N.E. 114, 52 L.R.A. 790; Underwood v. Bank of Liverpool, [1924] 1 K.B. 775; Knoxville Water Co. v. East Tennessee Nat. Bank, 123 Tenn. 364, 131 S.W. 447; Culhane v. Rockford Finance & Thrift Co., 7 Cir., 74 F.2d 1; Havana Cent. R. Co. v. Central Trust Co. of New York, 2 Cir., 204 F. 546, L.R.A.1915B, 715; certiorari denied, 234 U.S. 755, 34 S.Ct. 673, 58 L.Ed. 1578.

In our opinion, the court below should have directed a verdict in favor of the Association upon the first count of the complaint in No. 6811, but since the jury rendered a verdict for the Association upon the issue, it is unnecessary to set aside the judgment. As to the verdicts rendered in favor of the receiver of the Bank upon the second and third counts of the complaint in No. 6811, it is obvious that such were rendered properly. Judgments were entered thereon. As we have stated, these counts were based upon the notes given by the Association to the Bank in the sums of $10,000 and $14,000 respectively. No appeals were taken from these judgments.

*Specifically As to the Appeal in No. 6810.*

It will be borne in mind that the cause of action stated in the first count of the complaint depends upon the $50,500 note and the guaranty executed by the directors of the Loan Association upon December 9, 1929, "to assure and guarantee" the prompt payment of the loan at maturity. The second and third counts of the complaint are declared upon the guaranty of December 9, 1929, unlimited in amount, given by the directors of the Association to the Bank to assure and guarantee the prompt payment of all the loans of the Association at their maturity.

If the guaranty of December 9, 1929, was procured by the fraud of Tilton as agent for the Bank, it follows that the guaranty will not support causes of action declared upon the three counts in this suit. The primary question of whether or not Tilton was guilty of fraud in procuring the guaranty was an issue for the jury and there was ample evidence introduced to sustain such a conclusion by the jury.

The fact that the directors intended to execute a "duplicate" of the guaranty of December 9, 1927, a "live" paper guaranteeing anew to the Bank their individual obligations to assure the prompt payment of the notes of $10,000 and $14,000 each, will not permit the appellant to recover against the directors upon the guaranty of December 9, 1929, upon the notes of $10,000 and $14,000 each. The fraud exercised by Tilton in procuring the execution of the guaranty vitiates it in toto. He who procures an agreement by fraud cannot waive that part of it affected by the fraud and enforce the remainder of the contract. 13 C.J. § 295, p. 390. See, also, Leake on Contracts, p. 379; Williston on Contracts, Revised Edition, Vol. 5, § 1488, p. 4154; and Foster v. McKinnon, L.R. 4 C.P. 704. We are therefore of the opinion that Tilton's fraud invalidated the guaranty in toto.

A more difficult issue, however, is presented by the question of whether or not Tilton's fraud in procuring the guaranty may be imputed to the Bank. The fraud may be imputed to the Bank if Tilton in fact acted as the Bank's agent when he procured the guaranty.

The appellant contends that since Tilton's interest was adverse to that of the Bank, he having signed the guaranty upon the back of the $50,500 note which we have set out in the first note to this opinion, his fraud or his knowledge of his fraud cannot be charged to the Bank. See Egan v. Hemingway, 159 A. 703, 10 N.J.Misc.R. 466; Camden Safe Deposit & Trust Co. v. Lord, 67 N.J.Eq. 489, 58 A. 607; Stratton v. Allen, 16 N.J.Eq. 229; and Barnes v. Trenton Gas Light Co., 27 N.J.Eq. 33. Tilton, however, was not only a director of the Bank, he was also treasurer of the Association, a director and its dominating influence. We think that his interest was at least as adverse to that of the Association as it was to that of the Bank.

He was a debtor to the Bank and the defrauder of the Association. Legal presumptions as to adverse interests must give way before facts and there is testimony to the effect that Tilton obtained the guaranty of December 9, 1929, at the request of the

Bank's board of directors, its president and executive vice-president. Tilton testified that the guaranty here relied on was drawn up by the Bank's attorney and that he requested Tilton to get it signed " * * * because everything was going hay-wire." There was sufficient evidence to go to the jury upon the issue of whether or not Tilton acted as agent for the Bank in procuring the guaranty. It follows therefore that the verdict of the jury of no cause of action in respect to all three counts of the complaint in No. 6810 finds full support in the evidence and may not be set aside.

*As to the Charges of the Trial Court.*

We have examined fully the charges of the learned trial judge in the light of the law and the evidence. With the exception of his refusal to direct a verdict in favor of the Association upon the first count in No. 6811 we perceive no reversible error.

Accordingly the judgments of the court below are affirmed.